(69 South. 751)
No. 21211.

STATE et al. v. C. S. JACKSON & CO. et al.
(June 29, 1915. Rehearing Denied Oct. 18, 1915.)

*(Syllabus by Editorial Staff.)*

1. INTERPLEADER ⊷17—CONCURSUS—JURISDICTION.

A concursus, filed by the state and a parish, to require a contractor's surety, and certain unpaid laborers, materialmen, and subcontractors to litigate among themselves their rights to a fund due from the state under a contract for the improvement of a highway, if admissible at all, was properly filed in the court of the parish within which the highway upon which liens were claimed was situated and most of the parties in interest resided.

[Ed. Note.—For other cases, see Interpleader, Cent. Dig. § 39; Dec. Dig. ⊷17.]

2. INTERPLEADER ⊷19 — CONCURSUS — PARTIES.

There was no misjoinder of parties in such suit, since, if there was to be a concursus, all parties in interest had to be cited.

[Ed. Note.—For other cases, see Interpleader, Cent. Dig. § 41; Dec. Dig. ⊷19.]

3. PARTNERSHIP ⊷34 — HOLDING OUT AS PARTNER—ESTOPPEL.

A firm, which held out a person as a partner, or, at any rate, as having full authority

to represent it in all matters pertaining to the work under a contract, was estopped from contesting its liability for debts contracted by him in furtherance of such contract.

[Ed. Note.—For other cases, see Partnership, Cent. Dig. § 49; Dec. Dig. ⊷34.]

4. STATES ⊷193—HIGHWAY IMPROVEMENT—ACTIONS—RIGHTS OF LABORERS AND MATERIALMEN.

The state is not liable to laborers, materialmen, and subcontractors dealing with a contractor, with whom the state has a contract for the improvement of a highway, under Act No. 49 of 1910, providing for the construction and maintenance of highways at the joint expense of the state and the parish wherein the highway is situated.

[Ed. Note.—For other cases, see States, Cent. Dig. § 186; Dec. Dig. ⊷193.]

5. LIENS ⊷8—PRIVILEGE—STATUTORY PROVISIONS—CONSTRUCTION.

Liens and legal mortgages can exist only by express provision of law, and, being in derogation of common right, especially where purporting to secure the debt of one person by an incumbrance upon the property of another, any law creating them must be strictly construed.

[Ed. Note.—For other cases, see Liens, Cent. Dig. § 2; Dec. Dig. ⊷8.]

6. MECHANICS' LIENS ⊷13 — MECHANICS' PRIVILEGES—PROPERTY SUBJECT TO LIEN—"STREET."

Const. art. 185, provides that the General Assembly shall pass laws to protect laborers on buildings, streets, roads, etc., and other similar works, against failure of contractors and subcontractors to pay their current wages when due, and to make the corporation, company, or individual, for whose benefit the work is done, responsible for their ultimate demand. Act No. 134 of 1880, passed to carry out this constitutional provision, provides that laborers and workingmen on buildings, streets, and other similar works (without enumerating roads), when their services are engaged by the proprietor or his agent upon any of such works, shall have a first privilege upon the buildings, or other works upon which their labor has been bestowed. *Held*, that laborers have no lien upon public roads, upon which they perform work, as "street" is a word of fixed meaning, descriptive of a highway within a municipality, and not applicable to a highway in the open country, outside of the limits of a municipality, and the word "streets," in the statute, does not include roads, and, even though laborers had such a lien, materialmen and subcontractors would have no such lien.

[Ed. Note.—For other cases, see Mechanics' Liens, Cent. Dig. §§ 14, 15; Dec. Dig. ⊷13.

For other definitions, see Words and Phrases, First and Second Series, Street.]

**7. MECHANICS' LIENS**  13 — **MECHANICS' PRIVILEGES—PROPERTY SUBJECT TO LIEN—PUBLIC ROADS—"WORKS."**

Civ. Code art. 2773, provides that workmen and persons furnishing materials, who have contracted with the undertaker, have no action against the owner, who has paid him, and that, if the undertaker be not paid, they may cause the moneys due him to be seized, and that they are of right subrogated to his privilege. Article 3249 provides that subcontractors, laborers, etc., employed in constructing, rebuilding, or repairing houses, buildings, or making other works, and those who have supplied the owner, or other person employed by the owner, with materials of any kind for the construction or repair of any edifice, or other work, shall have a lien and privilege upon the building, improvement, or other work, and the lot upon which it shall be erected. Article 3272 provides that subcontractors, laborers, etc., employed in constructing houses, etc., or making other "works," and those who have supplied the owner, etc., with materials for the construction or repair of his buildings, or other "works," preserve their privileges only in so far as they have complied with that article relative to recording their claims. *Held* that, as the statute uses only the word "works," and not the words "public works," no lien on works of a public character, like a public road, is given; it being well established that public property does not come under the operation of statutes creating mechanics' or other liens, unless expressly so provided.

[Ed. Note.—For other cases, see Mechanics' Liens, Cent. Dig. §§ 14, 15; Dec. Dig.  13.

For other definitions, see Words and Phrases, First and Second Series, Works.]

**8. STATES**  192—**CONCURSUS—NECESSITY OF LIABILITY TO BOTH PARTIES.**

As the state, when it contracts for the improvement of a highway, does not become personally liable to laborers, materialmen, and subcontractors, and as they acquire no lien upon the work, the state, under Code Prac. art. 15, providing that an action can only be brought by one having a real and actual interest, which he pursues, has no interest authorizing it to file a concursus, requiring the contractor's surety and unpaid laborers, materialmen, and subcontractors to litigate their rights to the fund due from the state under the contract, as the moral or paternal interest which the state may have in a matter of private interest cannot serve as a basis for a cause of action, nor override its contractual obligation to make payment as stipulated in the contract.

[Ed. Note.—For other cases, see States, Cent. Dig. § 185; Dec. Dig.  192.]

**9. INTERPLEADER**  10 — **CONCURSUS — PARTIES ENTITLED.**

Act. No. 49 of 1910, provides for the construction and maintenance of highways at the joint expense of the state and the parish, and provides that one-half of the expense shall be borne by the state and one-half by the parish; that the contract for the work must be in the name of the state, with the approval of the president of the police jury of the parish; that no such work shall be undertaken until the police jury shall have agreed to assume its proportion of the cost; that the total cost shall be paid by the state treasurer out of a fund created for the purposes of that act; and that the parish shall refund the state one-half of such total cost. *Held* that, under a contract entered into in strict accordance with the statute, the only part the parish had was to obligate itself to reimburse the state, and it was no party to the contract between the state and the contractor, and hence could not file a concursus to require the contractor's surety and unpaid laborers, materialmen, and subcontractors to litigate between themselves their rights to a fund due from the state under the contract.

[Ed. Note.—For other cases, see Interpleader, Cent. Dig. § 12; Dec. Dig.  10.]

**10. APPEAL AND ERROR**  880—**REVERSAL—HARDSHIP TO NONAPPEALING PARTY.**

The state and a parish filed a concursus to require a contractor's surety and unpaid laborers, materialmen, and subcontractors to litigate their rights to a fund due from the state under a contract. The surety and its contractor filed an exception to the jurisdiction of the court, which was overruled; a bill of exceptions being reserved. The laborers, materialmen, and subcontractors filed answers, setting up their cross-demands. Judgment was rendered in their favor against the parish, the surety company, and the contractor, and ordering the claims paid out of the fund, and the contractor and the surety company appealed. *Held*, that it was no objection to the reversal of the judgment as against the surety, on the ground that the state and the parish had no interest authorizing them to file such suit, that the judgment against the parish for the claims of the laborers' materialmen, and subcontractors, not having been appealed from, had become final, as this was a matter with which the surety had no concern.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 3584–3590; Dec. Dig.  880.]

**11. HIGHWAYS**  113—**CONTRACTS—DEFAULT—RIGHTS OF LABORERS, MATERIALMEN, AND SUBCONTRACTORS.**

Where the contractor under a contract with the state defaulted, whereupon its surety completed the work at its own expense, through a party with whom it contracted, and the original contractor and the state highway engineer became parties to this contract, the contractor for the purpose of renouncing its rights, and the engineer for the purpose of consenting to the arrangement, the original contractor had no claim or right whatever to the money earned by the surety company for completing the work, and laborers, materialmen, and subcontractors dealing with it could have no greater rights

than their debtor, and hence had no right to a fund due from the state under the contract.

[Ed. Note.—For other cases, see Highways, Cent. Dig. §§ 348–352, 355; Dec. Dig. ⬅113; Contracts, Cent. Dig. § 1335.]

**12. HIGHWAYS ⬅113 — CONTRACTS—BOND—ENFORCEMENT.**

As act No. 49 of 1910, providing for the construction and maintenance of highways at the joint expense of the state and parish, does not require the contractor's bond to be conditioned for the payment of laborers, materialmen, and subcontractors, or authorize them to sue upon any bond given to the state, they could not sue on a bond so conditioned, but naming the state as the only obligee; and, the state having no pecuniary interest authorizing it to sue in their behalf, a clause as to the payment of laborers, materialmen, and subcontractors was mere surplusage.

[Ed. Note.—For other cases, see Highways, Cent. Dig. §§ 348–352, 355; Dec. Dig. ⬅113; Contracts, Cent. Dig. § 1335.]

**13. APPEAL AND ERROR ⬅1172—REVERSAL IN PART.**

The state and a parish filed a concursus to require a contractor's surety and unpaid laborers, materialmen, and subcontractors to litigate among themselves their rights to a fund due from the state under a contract. The contractor and the surety company filed an exception to the jurisdiction of the court and reserved a bill of exceptions to the overruling thereof. The laborers, etc., filed answers setting up their cross-demands, and the surety company and the contractor joined issue on the demands of the state and parish, and the cross-demands of the laborers, etc. Judgment was rendered in favor of the laborers, materialmen, and subcontractors against the parish, the surety company, and the contractor, and ordering the claims paid out of the fund. The surety and the contractor appealed. *Held* that, while the state and the parish had no interest authorizing them to file a concursus, and the judgment must be set aside so far as it authorized the state to deposit such fund and to cite the parties to litigate their rights therein, and required payment of the claims of the laborers, materialmen, and subcontractors out of such fund, the judgment in favor of such claimants against the contractor would be affirmed, as there was no exception to the cross-demand, but only an answer to the merits, and the exception to the jurisdiction was without merit; the suit having been brought in the proper court, had it been maintainable at all.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4555–4561; Dec. Dig. ⬅ 1172.]

Appeal from Twelfth Judicial District Court, Parish of Sabine; J. H. Boone, Judge.

Suit by the State and another against C.

S. Jackson & Co. and others. From the decree, the defendants C. S. Jackson & Co. and the United States Fidelity & Guaranty Company appeal. Judgment set aside in part, and affirmed in part.

J. Zach Spearing, of New Orleans, and J. R. Monk, of Leesville, for appellant United States Fidelity & Guaranty Co. S. D. Ponder, of Many, for appellant C. S. Jackson & Co. J. S. Atkinson, of Shreveport, for appellee Dickson. R. A. Fraser, of Many, for appellees Williams and others. R. G. Pleasant, Atty. Gen., and Harry Gamble, Asst. Atty. Gen., for the State.

PROVOSTY, J. Act 49, p. 74, of 1910, provides for the construction and maintenance of highways at the joint expense of the state and of the parish wherein the highway is situated. The expense of the work is required to be borne, one-half by the state and one-half by the parish. All work is to be under the supervision of the state board of engineers, and to be done through an officer provided for by the act, to be known as the "state highway engineer." The initiative for having any work done is left to the local authorities, who must make written application to the state engineer of highways, who then advertises for bids and makes a contract with the successful bidder. This contract must be "in the name of the state of Louisiana, signed by the state highway engineer and the contracting parties, with the written approval of the president of the police jury of the parish wherein the work is to be done." No such work can be undertaken or contract entered into until the police jury shall have agreed in writing to assume its proportion of the cost thereof, nor "until it shall be first made to appear to the state highway engineer that the money with which to meet the proportion of said expense to be borne by the parish is either already in the hands of the parish treasurer, or will be so

in hand and immediately available upon the completion and acceptance of said work." The contractor is required to furnish bond "in a sum equal to one-half of the amount of the contract awarded, conditioned that such work shall be performed in accordance with the plans, specifications and the terms of the contract." Authority is given to the state highway engineer to have the work done by a force employed by himself, if he deems it more advantageous to have it done in that way than through a contractor. Section 7 provides:

"The total cost of all work of highway construction, improvement and maintenance under the provisions of this act shall be paid by the state treasurer upon the warrant of the state highway engineer, * * * out of the fund hereafter created for the purposes of this act. The parish * * * wherein such work of improvement has been or is being performed shall refund the state one-half of such total cost thereof," to be paid to the state treasurer by the parish treasurer, etc.

Under the provisions of this act a contract was entered into, in strict accordance with the provisions of the act, with C. S. Jackson & Co., one of the defendants in this case, for the improvement of a highway in the parish of Sabine, and bond was given by the said contractor, with the United States Fidelity & Guaranty Company as surety thereon, in the words following:

"Know all men by these presents, that we, C. S. Jackson & Co., as principal, and the United States Fidelity & Guaranty Company, a surety company authorized to do business in the state of Louisiana, as surety, are held and firmly bound, in solido, unto the state of Louisiana, in the full sum of fourteen thousand dollars, payable in lawful money of the United States, and to this end we hereby obligate our heirs, successors, and assigns.
"Now, the condition of this bond is such that if the said C. S. Jackson & Co., contractor, shall well and truly perform their contract, made and entered into this 25th day of February, 1913, to construct the Many-Ft. Jessup highway in the parish of Sabine, according to the stipulations therein recited, and shall pay all sums due on materials used and for wages earned by laborers and workmen employed upon the work to be done, then, and in that case, the bond shall be null and void; otherwise, to remain in full force and virtue to the canceling of all damages and costs accruing to the state, and to the parish of Sabine, arising through the failure of the contractor to fulfill his contract or to meet the obligations incurred on account of same.
"In faith whereof, we have subscribed this obligation at New Orleans, La., this 8th day of March, A. D. 1913."

C. S. Jackson & Co., after partial execution of the work, defaulted on their contract, leaving many laborers and materialmen and subcontractors unpaid; and these creditors recorded their claims in the clerk's office of the parish of Sabine for the purpose of conserving such rights as they might have against all parties concerned, and such liens, privileges, or mortgages as they might be entitled to upon the work itself. The contract was subsequently completed by the surety company.

And thereupon the state of Louisiana and the parish of Sabine jointly filed the present suit, which is simply a concursus; that is to say, the state has deposited in court the balance of $7,070.02 due to the surety company for having completed the contract, and has cited the surety company, C. S. Jackson & Co., and the laborers, materialmen, and subcontractors whose claims are recorded to come and litigate among themselves their rights to this fund.

The surety company and C. S. Jackson & Co. filed an exception to the jurisdiction of the court ratione personæ. The same having been overruled, and a bill of exception duly reserved, the surety company filed exceptions of misjoinder of defendants and no cause of action. The laborers, materialmen, and subcontractors filed answers in which they asked for a personal judgment upon their claims against the state, the parish of Sabine, and C. S. Jackson & Co. and the surety company, in solido, and for recognition and enforcement of a lien and privilege and mortgage in their favor upon the fund in court and upon the work or highway. The exceptions of misjoinder and no cause

of action having been overruled, the surety company and C. S. Jackson & Co. filed their answers, joining issue on the demands of the state and the parish of Sabine, and also upon the demands contained in the answers filed by the laborers, materialmen, and subcontractors. There was judgment in favor of the latter for the amount of their claims, against the parish of Sabine, the surety company, and C. S. Jackson & Co., in solido, and ordering the said claims paid out of the fund in court, and ordering also the costs of the suit, as well as the cost of recording the said claims, to be paid out of said fund, and ordering the remainder of said fund to be paid to the surety company, and also ordering as follows:

"It is further ordered, adjudged, and decreed that, upon the distribution of the said fund in accordance with this decree, all the liens and claims recorded against the owners and contractors of Many-Ft. Jessup highway be canceled and erased from the mortgage records of Sabine parish, and the state of Louisiana and Sabine parish be released from all further liability or indebtedness on account of said contract for the construction of said highway."

From that judgment C. S. Jackson & Co. and the surety company have appealed.

[1, 2] We think the exceptions to the jurisdiction were properly overruled. If a concursus was admissible at all in the matter, the proper court to entertain it was that within whose territorial jurisdiction the highway upon which the liens were claimed was situated and most of the parties in interest resided. And the exception of misjoinder was also properly overruled, since, if there was to be a concursus, all parties in interest had to be cited.

[3] A question of fact is raised in the case, whether the debts to the laborers, materialmen, and subcontractors were contracted by C. S. Jackson & Co. or by one O. T. Synnott. Synnott had charge of the work and contracted the said debts in the execution of it; but C. S. Jackson & Co. and the surety company contend that he was merely a sub-contractor, for whose debts C. S. Jackson & Co. or the work cannot be made liable. Against this it is contended that Synnott was a partner of C. S. Jackson & Co., and represented the firm. He was unquestionably held out by C. S. Jackson & Co. to be a partner, or, at any rate, to have full authority to represent said firm in all matters pertaining to the work; and hence C. S. Jackson & Co. are estopped from contesting their liability for the debts in question, which are shown to have been contracted in furtherance of said work. The legal situation is therefore just as if these debts had been contracted by C. S. Jackson & Co., and the personal judgment against C. S. Jackson & Co. must in consequence be affirmed.

Jackson & Co. make no claim to the fund, and the contest in so far as this fund is concerned is exclusively between the surety company and the laborers, materialmen, and subcontractors.

The surety company contends that the state was without right to provoke this concursus, but should have simply paid the money to the contractor as stipulated in the contract. And in that connection the surety company argues that the laborers, materialmen, and subcontractors did not have any lien or mortgage upon the work, or any claim whatever against the state, and that therefore the state was utterly without interest to institute said concursus, and that a person without interest cannot bring suit.

The laborers, materialmen, and subcontractors, on the other hand, contend that they did have a lien upon the work, and that therefore the state did have an interest, namely, the interest in having this lien removed, and that, even if it were otherwise, still the institution of the concursus was proper, in view of that clause in the bond by which the surety company guaranteed the payment by Jackson & Co. of "all sums due on materials and for wages earned by labor-

ers and workmen employed upon the work to be done."

The right of the state to file the suit was contested by the exception of no cause of action. The answer of the surety company to the suit was filed only after that exception had been overruled, and a bill reserved to the ruling. This exception is the first matter to be considered.

Code of Practice, art. 15, provides that:

"An action can only be brought by one having a real and actual interest, which he pursues, but as soon as that interest arises he may bring his action."

If, therefore, the state was without a "real and actual interest" in provoking this concursus, it was without right to do so, and the proceeding must be dismissed.

[4] Whether it had such an interest depends upon whether the laborers, materialmen, and subcontractors had a lien or mortgage on the work, for it is not, and could not be pretended that there was any personal liability to them on the part of the state. If they did, the state had an interest in procuring the removal of such lien or mortgage.

[5] No one questions that liens and legal mortgages can exist only as the effect of some express provision of law, and that, being in derogation of common right, especially where purporting to secure the debt of one person by an incumbrance upon the property of another person, they are stricti juris, or, in other words, any law creating them must be strictly construed.

[6] The only law to which we are referred as granting a lien or mortgage to laborers, materialmen, or subcontractors upon a public work such as a highway, is Act 134, p. 183, of 1880, which reads:

"That laborers and workingmen on buildings, streets, railroads, canals, ditches and other similar works, when their services are engaged by the proprietor or any agent of the proprietor, upon any of the works above enumerated, shall have a first privilege upon the buildings or other works upon which their labor has been bestowed."

This act was passed to carry out article 185 of the Constitution, which reads:

"The General Assembly shall pass laws to protect laborers on buildings, streets, roads, railroads, canals, and other similar works, against the failure of contractors and subcontractors to pay their current wages when due, and to make the corporation, company, or individual, for whose benefit the work is done, responsible for their ultimate payment."

It will be noted that, while the said article of the Constitution reads "streets, roads, railroads, canals," the said act of 1880 reads "streets, railroads, canals," leaving out the word "roads." In view of this omission, which cannot be supposed to have been accidental, we must hold that the said statute does not apply to public roads.

We are asked to extend the meaning of the word "streets," so as to include roads; but, in the first place, "street" is a word of fixed meaning in the language, descriptive of a highway within a municipality, and not applicable to a highway in the open country outside of the limits of a municipality." A street is a public way or road in a city or village, as distinguished from public ways or roads in a township or country. 27 A. & E. E. of L. 102. See, also, 28 Cyc. 832. The said article of the Constitution, itself, distinguishes them by requiring laborers on both streets and roads to be protected. And, in the next place, statutes in derogation of common right, such as those conferring liens are recognized to be, are required to be strictly construed; that is to say, their terms are not to be extended by implication, or by the invocation of any supposed intention.

We do not find the said statute to be applicable to this case; and, even if it were, it could operate only in so far as the laborers are concerned, not the materialmen and subcontractors.

[7] In the brief of the learned Attorney General, appearing herein for the state, we are referred to articles 2773, 3249, and 3272 of the Civil Code, which provide that work-

men and materialmen may cause the amount due the contractor to be seized, and that they have a privilege upon the buildings or other works. In quoting article 3272 in this brief the word "public" has been added before the word "works"; but it is not in the text. In the absence of that word the said article 3272 cannot be made to apply to a work of a public character like a public road. That question was considered by this court in the recent case of Barrett v. Board of Commissioners, 133 La. 1022, 63 South. 505, 50 L. R. A. (N. S.) 469, where it was held that public property did not come under the operation of statutes creating mechanics' and other liens, unless expressly so provided in the statute. And this holding was simply in line with a well-established jurisprudence referred to in said decision.

[8] There was no personal liability whatever on the part of the state to these laborers, materialmen, and subcontractors; and as there was no lien upon the work, the consequence follows that the state was without interest to file the suit, and that the exception of no cause of action should have been maintained, and the suit dismissed. The state, no more than any other litigant, can maintain a suit without some pecuniary interest sought to be vindicated in the suit. The mere moral, or paternal, interest the state might have in any matter of private interest cannot serve as a basis for a cause of action. Nor can any such paternalistic interest override a contractual obligation, binding upon the state in conscience and in law, just as a like condition would be upon a private person, to make payment in the manner and form stipulated in the contract.

[9] As for the parish of Sabine, it was entirely without quality to file the suit. The contract for the construction of the works was between the state and C. S. Jackson & Co. Jackson & Co. were to do the work, and the state was to pay for it. The contract reads:

"The state engages to pay the said contractor in such obligations as are provided for in Act 49 of 1910, by warrant drawn against the said treasurer of Louisiana, all partial and final payments above stipulated."

The only part the parish of Sabine had in said contract was to obligate herself to reimburse the state her share of the cost of said work, and to reimburse to the state the entire cost over and beyond $20,000. The document evidenced two contracts entirely separate and distinct—one, between the state and the parish of Sabine, to which C. S. Jackson & Co. was not a party; the other, between the state and C. S. Jackson & Co., to which the parish of Sabine was not a party.

[10] It is urged that, as a matter of fact, judgment has been rendered against the parish of Sabine for the amount of the claims of these laborers, materialmen, and subcontractors, and that this judgment has not been appealed from, and is now final.

But that is a matter between the parish of Sabine and these her now judgment creditors, with which the surety company has nothing to do. That company filed an exception of no cause of action, which, being sustained, has the effect of dismissing the suit altogether as to it. If the parish of Sabine has allowed herself to be condemned when she was not liable, that is a matter, we repeat, with which the surety company has no concern.

[11] After the default of C. S. Jackson & Co., the surety company completed the work, at its own expense, through a third person, with whom it entered into a contract for that purpose. C. S. Jackson & Co. and the state highway engineer were parties to this contract; the former for the purpose of renouncing all rights they might have and consenting that all future payments should be made to the surety company, and the state

highway engineer for the purpose of consenting to this arrangement. It was not a new contract by the state for the completion of the work, but simply an arrangement by which the C. S. Jackson & Co. contract should be carried out by the surety company, and all payments thereafter to accrue should belong to, and be made to, the said company. Jackson & Co., therefore, had no claim or right whatever to the money thus earned by the surety company, and which simply represented the return to it of a part of the money put out by it for completing the work in fulfillment of the obligation of its bond in favor of the state. The creditors of Jackson & Co. can have no greater rights than their debtor, and hence have no right to this money.

[12] The clause in the bond, by which the surety company obligated itself to pay "all sums due on materials used or for wages earned by laborers and workmen employed upon the work to be done," is much relied on by the laborers, materialmen, and subcontractor; but, as has been noted, the only obligee named in the bond is the state of Louisiana. The laborers, materialmen, and subcontractors are not named in it as obligees, nor is the parish of Sabine.

Such being the case, no one could bring suit upon it except the state of Louisiana; and the state, as has been already shown, could do so only in vindication of whatever pecuniary interest she might have in the matter; and the only pecuniary interest she could possibly have had in the matter would have been for the failure to do the work stipulated to be done under the contract. This clause as to laborers, materialmen, and subcontractors, therefore, added nothing to the bond, and is in consequence mere surplusage in it.

The state, as has already been shown, could not sue to enforce this clause, because utterly without pecuniary interest in the premises, and no one can maintain an action of any kind without some pecuniary interest to be vindicated. The laborers, materialmen, and subcontractors could not maintain an action upon this clause, because the bond stipulated nothing in their favor, and they were not privies to it. By the contract of the bond the surety company agreed and bound itself to pay $14,000 to the state, and not one cent to anybody else. It did not bind itself to pay one cent to these laborers, materialmen, and subcontractors, In Salmen Brick & Lumber Co. v. Le Sassier, 106 La. 389, 31 South. 7, a materialman brought suit upon just such a bond; and the court held that this clause was not a stipulation pour autrui, and that the materialman had no right of action upon it. In Hughes v. Smith, 114 La. 298, 38 South. 175, where a similar clause was again involved, the court again held that the laborers, materialmen, and subcontractor had no action on the bond. See, also, L'Hote Lumber Co. v. Dugue, 115 La. 669, 39 South. 803.

If the statute under which the contract was entered into, and in pursuance of which the bond was given had required a bond to be given in favor of the laborers, materialmen and subcontractors, or had provided that these creditors of the contractor should have a right of action upon any bond given to the state, as do the statutes for the construction of buildings by private persons, the statute would be read into the bond, and the right of action would exist; but the statute is significantly silent on that point.

The decision in Lichtentag v. Feitel, 113 La. 931, 37 South. 880, does not in any degree overrule the Le Sassier Case; and in so far as it appears to militate against its doctrine was distinguished in Hughes v. Smith in these words:

"In the case of Lichtentag v. Feitel, 113 La. 931, 37 South. 880, we held that the surety by his actions and conduct had substituted himself for the contractor, and was estopped to deny his liability for materials furnished."

It will be observed that two of the justices concurred only in the decree in this Lichtentag Case. Moreover, it could be authority only for a suit by the laborers, materialmen, and subcontractors upon the bond, and we have no suit of that kind in the present case.

[13] The laborers, materialmen, and subcontractors have judgment against C. S. Jackson & Co. It was rendered upon issue joined between the parties, and by a court of competent jurisdiction ratione materiæ. Jackson & Co. did not plead to the jurisdiction of the court to entertain the demand for judgment against them, made against them by their several codefendants in the concursus proceeding in their answers. They (Jackson & Co.) in their answer joined issue, without reservation, upon these several cross-demands. True, before doing so, they averred that they reserved the benefit of the exception to the jurisdiction which they had filed as against the state and the parish of Sabine in the demand of the latter for a concursus; but that exception was, as already stated, without merit, and hence its reservation serves nothing—especially that it was an exception to the concursus, and not to the cross-demand of their fellow codefendants in the concursus for a personal judgment. To this cross-demand for a personal judgment there was no exception, but only an answer to the merits. We do not see what else we can do but affirm this judgment.

The state not being liable for costs of court, the costs of the main suit will have to fall upon her coplaintiff, the parish of Sabine. The costs of the cross-action of the laborers, materialmen, and subcontractors, and of their reconventional demand, must fall upon the parish of Sabine and C. S. Jackson & Co.

It is therefore ordered, adjudged, and decreed that the judgment appealed from be set aside in so far as it decreed and ordered the claims of the laborers, the materialmen, and the subcontractors to be paid out of the fund deposited in court by the state, and in so far as it condemned the United States Fidelity & Guaranty Company to pay same, and in so far as it maintained the right of the state to deposit said fund in court and cite the parties made defendant to her suit to litigate their rights contradictorily with each other against said fund, and that the said suit of the state and of the parish of Sabine be dismissed, and that in all other respects the said judgment remain unaffected; the parish of Sabine to pay the costs of this suit, except those of the cross-action and of the reconventional demand of the laborers, materialmen, and subcontractors against C. S. Jackson & Co. and the parish of Sabine, which are to be paid by C. S. Jackson & Co. and the parish of Sabine jointly.