(113 So. 825)

No. 28180.

## STATE v. SOUTHERN COTTON OIL CO.

March 28, 1927. On Rehearing, July 11, 1927.

*(Syllabus by Editorial Staff.)*

1. Licenses ⊚⟹32(2)—Claim for additional license tax for 1924 made March 22, 1926, was not too late, but "promptly" made (Act No. 233 of 1920, § 3, class 14, and § 33; Act No. 148 of 1906).

Claim made by collector of state taxes on March 22, 1926, for additional license, under Act No. 233 of 1920, § 3, class 14, for year 1924, *held* not too late, in view of Act No. 148 of 1906, and Act No. 233 of 1920, § 33, providing that claims made within three years were made "promptly."

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Promptly.]

164 LA.—8

2. Licenses ⊚⟹19(4)—One extracting crude oil from cotton seed and refining crude oil into edible oil held "manufacturer," exempt from license tax (Act No. 205 of 1924).

One whose business is that of extracting crude oil from cotton seed and of refining crude oil into edible oil *held* "manufacturer," within license statute (Act No. 205 of 1924), and hence exempt from license tax for year 1925 and subsequent years.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Manufacturer.]

3. Licenses ⊚⟹19(4)—To be "manufacturer" within license statute, one may work with partially manufactured material (Act No. 205 of 1924).

To be exempt from operation of license statute (Act No. 205 of 1924) as "manufacturer," one may give new shapes, qualities, and combinations to matter which has already gone through some artificial process, and must depend for profit on labor which he bestows on raw or partially manufactured material.

4. Courts ⊚⟹100(1)—Cases based wholly on certain opinion must fall with it when it is overruled.

Where opinion of appellate court is overruled by subsequent opinion, cases based wholly on former opinion must fall with it.

5. Licenses ⊚⟹8(2) — Manufacturer held not bound for license tax under statute, since provisions of former statute were omitted (Act No. 205 of 1924; Act No. 233 of 1920, § 3).

Under Act No. 205 of 1924, which is license statute, no manufacturer is bound for license tax for year 1925 and subsequent years, since provisions of Act No. 233 of 1920, § 3, which expressly laid license tax on manufacturers, were omitted.

### On Rehearing.

6. Appeal and error ⊚⟹939—Supreme Court will presume that statement of facts found in transcript properly belongs there.

Supreme Court will presume that statement of facts found in transcript properly belongs there; it not being possible for members to examine each record with miscroscopic care.

7. Appeal and error ⊚⟹1177(9)—Supreme Court, having decided state is entitled to recover additional license tax from defendant, will remand case, in absence of evidence on which license can be based.

In action by state to recover additional license tax for year 1924, Supreme Court, hav-

ing decided that state was entitled to recover additional tax, will remand case, where there is no evidence in record on which such license can be based.

Appeal from Twenty-Fourth Judicial District Court, Parish of Jefferson; L. Robert Rivarde, Judge.

Action by the State against the Southern Cotton Oil Company. Judgment for defendant, and plaintiff appeals. Reversed and remanded.

Charles J. Larkin, Jr., of New Orleans, for the State.

Dufour, Goldberg & Kammer, of New Orleans, and J. K. Gaudet, of Gretna, for appellee.

ST. PAUL, J. This is a claim by the collector of state taxes for an additional license for the year 1924, and for a license for the years 1925 and 1926. And the defense is that the collector has delayed too long in seeking to collect the additional license for the year 1924, and that defendant, being a manufacturer, is not liable for any license for the other two years.

## I.

[1] In the year 1924 defendant paid a license of only $100, when in fact it should have paid a license of $300 under Act 233 of 1920, § 3, class 14, p. 396. It is contended that since the collector waited until March 22, 1926, to make this claim for an additional license for that year, he has waited too long; and defendant relies on State v. N. O. Chess, Checkers & Whist Club, 116 La. 46, 40 So. 526, in support of its contention that the tax collector has not acted *"promptly"* as required by law.

When that case was decided the Legislature had not defined what it meant by requiring that action be taken *promptly*, and, accordingly, the court was free to give that expression what meaning it thought just. But immediately following that decision the Legislature made its meaning clear by providing that claims for licenses and for additional licenses shall be made within three years from the time said licenses become due, and that no inaction on the part of the collector should debar the right to proceed within that delay. Act 148 of 1906, p. 252. And Act 233 of 1920, § 33, p. 436, must be construed in connection with said act of 1906.

## II.

[2] Defendant's business is that of extracting crude oil from cotton seed, and of refining into edible oil the crude oil so extracted and other crude cotton seed oil which it purchases.

The process of extracting the crude oil from cotton seed consists essentially of crushing and grinding the raw cotton seed, then heating it and pressing out the oil.

The process of refining crude cotton seed oil and rendering it edible consists essentially of treating it with chemicals so as to rid it of impurities, give it an attractive color, and make it wholesome and palatable.

Both processes are accomplished by the use of machinery, and by the application of human skill to the various operations required to produce the desired result. So that in the one case crude oil is produced from the seed, and in the other edible oil is produced from the nonedible oil. Both are in our opinion *manufacturing* processes, and defendant is therefore a manufacturer.

## III.

[3] In New Orleans v. Le Blanc, 34 La. Ann. 596, this court pointed out that one who sells articles of commerce for the purpose of deriving a profit from said sales must be either a dealer or a manufacturer. And the court said:

"A dealer is not one who buys to keep, or makes to sell, but one who buys to sell again. He stands between the producer and the consumer, and depends for his profit, not upon the labor which he bestows on his commodities, but

upon the skill and foresight with which he watches the markets.

"[On the other hand] a manufacturer is not * * * [exclusively] one who produces a new article out of materials entirely raw. He is [also] one who gives new shapes, new qualities, new combinations to matter which has already gone through some artificial process; * * * and depends for his profit upon the labor which he bestows upon the raw [or partially manufactured] material."

See, also, City of New Orleans v. Ernst, 35 La. Ann. 746.

Hence one who converts crude cotton seed oil, wholly unfit for human consumption, into an edible article, by giving it a new quality, i. e., making it wholesome and palatable, is essentially a manufacturer; and a fortiori when his process begins with the very cotton seed itself.

And it would serve no purpose to list the various occupations which this court has held to constitute manufacturing; for upon analysis we find that each decision is grounded upon the fundamental distinction laid down in New Orleans v. Le Blanc, supra.

### IV.

[4] It is true that in Union Oil Co. v. Marrero, 52 La. Ann. 357, 26 So. 766, it was held that the refining of crude cotton seed oil was not a process of manufacturing. But that case is based wholly on State v. American Sugar Refining Co., 51 La. Ann. 562, 25 So. 447, wherein it was held that the refining of raw sugar, a process practically the same as that now under consideration, was not a manufacturing process. This last case, however, was flatly overruled in State v. American Sugar Refining Co., 108 La. 603, 32 So. 965, and is therefore no longer authority for the proposition that the refining of raw sugar is not a manufacturing process. Hence the case of Union Oil Co. v. Marrero, which is based upon it, must fall with it. Sublato fundamento cadit opus.

### V.

In Downs v. Dunn, 162 La. 747, 111 So. 82, we held that under the existing license statute (Act 205 of 1924, p. 370) no manufacturer is bound for a license tax for the year 1925 and subsequent years. So that defendant owes no license for the years 1925 and 1926.

### VI.

[5] Act 233 of 1920 was the general license law from 1920 until superseded by Act 205 of 1924.

Section 3 of said Act of 1920 expressly laid a license tax on manufacturers. But the provisions of that section were omitted from the act of 1924. And this was done apparently ex industria; for the penultimate clause of section 25 of the Act of 1924 provides tot verbis that the provisions of said section shall apply to any other business not provided for in the act, or by "separate law," *except manufacturing.*

Now the "separate law" above mentioned clearly meant some *special law*, and not an omitted section of some former general license law. For it is clear that any business not otherwise provided for in the act, or by some special law, must come under the provisions of said section 25, notwithstanding that it might have been otherwise provided for in some previous general license law; since the general license law was clearly intended to cover the whole subject-matter of licenses except so much thereof as might be covered by some *special,* i. e., "separate," law. In other words, it was clearly the intention of the act of 1924 to repeal the omitted sections of all former general license laws and replace them by section 25; since the provisions of such former laws would be clearly inconsistent with the provisions of said section.

And hence when the legislator provided that the provisions of said section 25 should not apply to manufacturers he meant, not

that manufacturers should be taxed in conformity with the provisions of some omitted section of former license laws, but that they *should not be taxed at all.* Otherwise we would have the queer spectacle of a section *patently* omitted at the beginning of the act *and yet reinstated by inference only* towards the end of the same act, when the logical thing to do, if the legislator intended the section to *continue in force, was to let it stand as in the former act* and thus remove all occasion for doubt.

Nor does it change the situation that the act provides (section 28) that nothing therein shall be construed to affect or repeal any existing laws levying license taxes on business and . occupations not enumerated in the act. The "existing laws" there meant are special laws, not general laws; for all general laws on the subject of licenses were merged into section 25 aforesaid. And we again repeat that the legislator could never have intended to do the *inane feat* of patently omitting a section of the law in order to give it force by inference only.

The contentions of the state to the contrary are therefore unsound.

### VII.

The trial judge rejected the claim of the state in toto; but we think that the defendant is liable for the additional license for 1924, though not liable for any license whatever for the years 1925 and 1926.

### Decree.

The judgment appealed from is therefore reversed, and it is now ordered that the state have judgment against the defendant for the full sum of $200; with 2 per cent. interest per month from March 1, 1924, until paid, and 10 per cent. attorney's fees on the whole, and that in other respects the demand of the state be rejected. Defendant is to pay all costs of both courts.

### On Rehearing.

LAND, J. A rehearing was granted in this case, as the license due by defendant company for the year 1924 was erroneously calculated in our original opinion upon the basis of gross sales of refined oil during the year 1923 amounting to $315,759.90.

These figures appear in an "agreed statement of facts on the trial of the rule" found on page 27 of the record, and, from a memorandum appearing on the statement of facts, the full amount of the license for the year 1924, as calculated under section 3 of Act·233 of 1920, is shown to be the sum of $300. From this amount we ·deducted the sum of $100, previously paid as a license for the year 1924 by defendant company, and rendered judgment in favor of the state for the balance of $200, as the present suit (No. 5608 on the docket of the lower court) is for an additional license tax for the year 1924.

On application for rehearing, our attention was called to the fact that the statement of facts on which we relied for the calculation of the license tax of 1924 in this case had been filed in another suit (State of Louisiana v. Gulf Valley Cotton Oil Co., Limited, No. 5604 on the docket of the lower court), and was inserted in the transcript by the clerk of the lower court through error and inadvertence.

[6] It is not possible for the members of this court to examine each record before us with microscopic care, and naturally we presume that a statement of facts found in the transcript properly belongs there.

[7] The rule taken by the tax collector in this case sets forth that there was due the state a license of $1,000 for the year 1924, based upon defendant's business being more than $1,000,000 and less than $2,000,000. On the trial of the rule, the state was denied the right to prove the gross receipts of defendant during the year ·1923, on the objection of counsel for defendant that no rule had been

taken by the tax collector to traverse the affidavit made by said company, and that it was too late to traverse same, as the tax collector had issued a license to the company for the year 1924. As we have decided that the state is entitled to recover an additional license for the year 1924, and as there is no evidence in the record upon which such license can be based, it becomes necessary to remand the case.

It is therefore ordered that this case be remanded to the lower court for the purpose of determining in due course the amount of license due to the state of Louisiana by defendant company for the year 1924, based upon the annual gross receipts of said company during the year 1923, and for further proceedings according to law.

It is further ordered that defendant company, appellee, pay the costs of this appeal, and that other costs in the case await the decision in the lower court.