98 So.2d 314 (1957)
GRAEME SPRING & BRAKE SERVICE, Inc.
v.
Lloyd M. DE FELICE.
No. 20838.
Court of Appeal of Louisiana, Orleans.
April 15, 1957.
On Rehearing November 18, 1957.
*316 Terriberry, Young, Rault & Carroll and Rufus C. Harris, Jr., New Orleans, for defendant and appellant.
Carol B. Hart, New Orleans, for plaintiff and appellee.
McBRIDE, Judge
The principal question in this controversy is whether plaintiff has a lien and privilege upon a certain tugboat owned by defendant.
Defendant entered into a contract with C. & B. Steel Boat Construction Co., Inc., for the construction of the steel tug "Denise DeFelice" for the price and sum of approximately $60,000. During the course of the work plaintiff, Graeme Spring & Brake Service, Inc., furnished certain materials and also the labor to install the same in the vessel. The materials were furnished and the work was performed on the order of C. & B. Steel Boat Construction Co., Inc., which was billed therefor by plaintiff on open account. The defendant, DeFelice, had nothing whatever to do with the said transaction.
The vessel, when completed, was delivered unto defendant who paid C. & B. Steel Boat Construction Co., Inc., the full balance due on the contract price. The contract stipulated for progressive payments.
Subsequently, the C. & B. Steel Boat Construction Co., Inc., filed voluntary proceedings in bankruptcy in the Federal District Court at New Orleans and the instant suit ensued.
Plaintiff claims defendant is personally indebted unto it for $1,083.59, the amount of the aforesaid materials and labor furnished on the order of C. & B. Steel Boat Construction Co., Inc. Plaintiff also alleges it has, under the provisions of LSA-R.S. 9:4502, as amended, a lien and privilege on the "Denise DeFelice" to said amount.
DeFelice denies any indebtedness whatsoever unto plaintiff; he alleges the vessel was built under his contract with C. & B. Steel Boat Construction Co., Inc.; that the vessel has been delivered to him by the contractor and that he has fully paid the price thereof. He assumes the position of plaintiff in reconvention and claims of plaintiff as damages the amount of his attorneys' fees. He also prays for a judgment declaring the lien null and void and the lien inscription cancelled.
After a trial on the merits of the case, the court below held plaintiff had a lien and privilege on the vessel arising under LSA-R.S. 9:4502, as amended, and judgment was rendered not only recognizing the asserted lien and privilege but also condemning defendant in personam to pay plaintiff's bill in the aforementioned amount. Defendant has appealed.
Within ninety days from the last day on which the materials were furnished and the labor performed, plaintiff filed an affidavit of lien in the mortgage records of Jefferson Parish against the vessel for the amount of its bill. This suit was also filed within said period.
The recordation of the affidavit upon the mortgage records produces no *317 legal effect. The inscription did not create a lien if none existed by statute, nor did it serve to preserve the lien if the law establishes one in favor of plaintiff. Section 19, art. 19, Constitution of 1921, LSA-Const., provides that privileges on movable property shall exist without registration except in such cases as may be prescribed by law. See, also, Inter City Express Lines, Inc., v. Guarisco, La.App., 165 So. 727. LSA-R.S. 9:4502, as amended, under which plaintiff claims his lien arises, makes no requirement for the registry of a lien and privilege asserted under the said section.
Plaintiff's counsel argues that the same principles of law that relate to building contracts in general apply with reference to the construction of water craft, and contends that the owner may be held personally liable for the claims of persons performing labor for or furnishing materials to the contractor. The provisions of the Building Contract Statute are stricti juris and do not apply in this instance, hence there is no necessity to discuss the matter further. We are unaware of any statutory law or jurisprudence in Louisiana to the effect that the owner of the vessel would be liable in personam for the amount due for labor and materials furnished by a third person to the shipbuilder.
The first and pertinent paragraph of LSA-R.S. 9:4502, as it was amended by Act 427 of 1952, reads:
"Any person engaged in the making or repairing of movable goods, furniture, upholstery, commodities, equipment, merchandise, machinery, or movable objects or movable property of any type or description, has a privilege on the thing for the debt due him for materials furnished or labor performed. This privilege is effective for a period of ninety days from the last day on which materials were furnished or labor was performed, if the thing affected by such privilege is removed from the place of business where such labor was performed or materials furnished; provided that if the thing affected by such privilege remains in the place of business of the person who furnished such materials or performed such labor, such privilege continues as long as such thing remains in such place of business."
Thus, that statute purports to grant unto any person engaged in the making or repairing of movable property of any type or description a lien and privilege on the thing for the debt due him for materials furnished or labor performed. The word "making" as it appears in the statute is synonymous with the word "manufacturing" and means the production of a new article out of raw materials or generally the giving of new shapes, new qualities or new combinations to matter which has already gone through some other artificial process. See State v. Southern Cotton Oil Co., 164 La. 225, 113 So. 825; Commonwealth v. Peerless Paper Specialty, Inc., 344 Pa. 283, 25 A.2d 323. Plaintiff was not "engaged in making" the vessel within contemplation of the statute and its only part in the construction thereof was to furnish, upon the contractor's order, a small portion of the materials used and the incidental labor necessary for the installation of those materials. These were supplied to C. & B. Steel Boat Construction Company, Inc., which was engaged in making the boat under the contract with defendant.
Nor was plaintiff engaged in repairing the vessel. The word "repair" is defined by Webster: "To restore to a sound or good state after decay, injury, etc." The Second Circuit Court of Appeal in Thompson Chevrolet Co. v. Blanchard, 15 La. App. 254, 131 So. 630, held that "repair," when used as a verb, means to restore to a solid or good state after decay, injury, dilapidation, or partial destruction. The word contemplates an existing structure or thing which has become imperfect, and *318 means to supply in the original existing structure that which is lost or destroyed, and thereby restore it to the condition in which it originally existed, as near as may be. Fuche v. City of Cedar Rapids, 158 Iowa 392, 139 N.W. 903, 44 L.R.A.,N.S., 590. It has been held that one making installation of a sprinkling system in a building is not engaged in "repairing." Grady v. National Conduit & Cable Co., 153 App.Div. 401, 138 N.Y.S. 549.
It appears perfectly plain to us that plaintiff who was not engaged in "making" or "repairing" the tug but who merely furnished and installed some of the materials used in the work, has no privilege on the vessel for a debt due by the contractor. The statute, unlike those provisions of the law which grant privileges on immovables for labor and materials, does not accord a third person who furnishes labor or materials for the making of movable property a privilege thereon for the amount owed him. If the Legislature ever intended that such person were to be protected by a privilege on the movable, it would have said so. No mention was made of such lien in Act No. 341 of 1946, which was incorporated in the LSA-Revised Statutes of 1950 under 9:4502, nor was anything said regarding such a lien in Act No. 427 of 1952 which amended LSA-R.S. 9:4502.
Were it to be held that a third person situated as was plaintiff is entitled to a privilege for material and labor charges would be to expose the person for whom the movable object was manufactured to liability for all manner of hidden liens, and the only means he could employ to shield himself would be to ascertain before accepting delivery of the property that the bill of each and every laborer and materialman had been satisfied by the manufacturer. This would be an enormous burden which the Legislature certainly could never have contemplated.
To recognize that plaintiff has a lien and privilege would require that the operation of the statute be extended to a situation not clearly intended. This should not be done. Willis v. Mills Tooke Properties, Inc., La.App., 42 So.2d 548.
Statutes conferring privileges are in derogation of common right and hence must be strictly construed by the courts, as secret liens hamper commerce and are in disfavor. Loeb v. Collier, 131 La. 377, 59 So. 816. Such statutes may not be extended by implication or analogy, as privileges can be claimed only when expressly granted by the law. American-LaFrance & Foamite Industries, Inc., v. Town of Winnfield, 184 La. 1043, 168 So. 293; American Creosote Works, Inc., v. City of Natchitoches, 182 La. 641, 162 So. 206; State v. C. S. Jackson & Co., 137 La. 931, 69 So. 751; Labouisse v. Orleans Cotton Rope and Manufacturing Company, 43 La.Ann. 245, 9 So. 204; City of Natchitoches v. Kile, La.App., 54 So.2d 834; Phillips v. Conley, La.App., 46 So.2d 650; Willis v. Mills Tooke Properties, Inc., supra; Kvaternick v. Knouse, La.App., 16 So.2d 74. This is particularly so with reference to a privilege claimed on property belonging to one who is not liable for the obligation. Boone v. Brown, 201 La. 917, 10 So.2d 701. The doubt, if any, is to be resolved against the person claiming the privilege. Shreveport Armature & Electric Works, Inc., v. Harwell, La.App., 172 So. 463; Jackson Homestead Ass'n v. Zimmer, 16 La.App. 647, 134 So. 126.
In reconvention appellant claims damages for attorney's fees in the amount of $500 "for the dissolution of said lien." It has not been shown that he has incurred an obligation to pay any attorney's fees, or, if so, the amount of such fees, and he is not entitled to a recovery therefor. Rhodes v. Collier, 215 La. 754, 41 So.2d 669, and the several cases therein cited. Furthermore, attorney's fees are not usually allowed as damages. Meraux & Nunez, Inc., v. Gaidry, 171 La. 852, 132 So. 401; Davis-Wood Lumber Co. v. Canulette Shipbuilding Co., Inc., 164 La. 301, *319 113 So. 855; Bentley v. Fischer Lumber & Manufacturing Co., Limited, 51 La.Ann. 451, 25 So. 262; Blackshear v. Landey, La.App., 46 So.2d 688; Voss v. Roach, La.App., 35 So.2d 142; Hoyt v. Smith, La.App., 187 So. 87; Bell v. Leiendecker, La.App., 180 So. 846. There is no analogy between a proceeding in which the nullity of a lien is sought and a rule for the dissolution of an improvidently issued conservatory writ. All the cases cited by appellant in which attorney's fees were allowed fall into the latter class.
However, under the reconventional demand defendant is entitled to have the nullity of the asserted lien and privilege decreed and to an order directing the cancellation of the inscription thereof.
In view of our holding, no discussion of an interesting proposition which occurred to us during consideration of the case is required, i. e., whether in view of the ninety day period of peremption set forth in the statute, the plaintiff would be entitled to have the lien recognized in a suit in personam unaccompanied by sequestration of the vessel.
For the reasons above-stated, the judgment appealed from is reversed, and it is now ordered that plaintiff's suit be dismissed; it is further ordered that the defendant have judgment in reconvention declaring the lien and privilege recorded in Mortgage Book 225 folio 309, Jefferson Parish, a nullity, and the Clerk of Court is ordered to forthwith cancel and erase said inscription. Plaintiff is to pay the costs of both courts as well as the Clerk's costs for cancelling the lien inscription.
Reversed.
REGAN, J., takes no part.

On Rehearing.
We granted a rehearing in this matter because plaintiff-appellee in its persuasive application therefor called our attention to LSA-C.C. art. 3237, the pertinent parts of which read as follows:
"Art. 3237. The following debts are privileged on the price of ships and other vessels, in the order in which they are placed:
* * * * * *
"8. Sums due to sellers, to those who have furnished materials and to workmen employed in the construction, if the vessel has never made a voyage; * * *.
* * * * * *
"The term of prescription of privileges against ships, steamboats and other vessels shall be six months."
We reiterate our belief that plaintiff-appellee has no privilege arising under LSA-R.S. 9:4502, but it is clear that by the provisions of the above-mentioned article of the Civil Code a privilege is granted on the vessel in favor of those who have furnished materials and to workmen employed in its construction during a period of six months from the furnishing of the materials or the performance of the work if the vessel has never made a voyage. This suit, in which the privilege is claimed in behalf of plaintiff-appellee for materials and labor furnished, was instituted well within the six-month period of prescription, but there is no evidence before us even tending to show whether the tug has ever made a voyage.
LSA-C.C. art. 3245 lays down the following definition of the word "voyage":
"A ship is considered to have made a voyage, when her departure from one port and arrival at another shall have taken place, or when, without having arrived at another, more than sixty days have elapsed between the departure and return to the same port; or when the ship, having departed on a long voyage, has been out more than sixty days, without any claim on the part of persons pretending a privilege."
*320 We might mention that it was decided by the United States Circuit Court of Appeals, Fifth Circuit, in Learned v. Brown, 94 F. 876, that a proper construction of LSA-C.C. art. 3237 is that steamboats owned in Louisiana and trading in the inland waters of the state are not making "voyages" within the sense of the article.
Whether plaintiff-appellee has a privileged debt against the vessel under LSA-C.C. art. 3237 for the materials and labor it furnished would depend on the activities of the vessel subsequent to its delivery to the defendant by the shipbuilder. If no voyage was made before the institution of the suit, then we believe plaintiff-appellee has a privilege for the amount of its claim for the labor and materials furnished during the construction. However, having no information on this focal point whether the vessel had made a voyage, it is impossible to adjudicate the matter on the record as it is now made up.
Plaintiff directed its suit at DeFelice, individually, and also prayed that its privilege against the vessel "Denise DeFelice" be recognized and enforced. We stated in our former opinion that plaintiff had no personal claim against the defendant and we not reiterate that view. However, there is before the court plaintiff's demand in rem for recognition of its privilege against the vessel.
In view of the fact that the judgment in plaintiff's favor was rendered more than two years after suit was filed, there occurred to us the question whether the claim to a privilege is barred by the six-month period of prescription set forth in LSA-C.C. art. 3237, in that plaintiff had not exercised its right of having had the vessel judicially seized by conservatory writ in enforcement of the privilege within such prescriptive period, but had only filed an ordinary suit by which it sought to impress the vessel with the privilege. In other words, did the prescription continue to run against the privilege so long as plaintiff took no steps to have the vessel judicially seized in enforcement of the privilege, or did the institution of an ordinary suit interrupt the running of the prescription? While there is no plea of prescription of six months, we cannot overlook the proposition because the Supreme Court has held that under LSA-C.C. art. 3237 such a privilege as plaintiff-appellee asserts ends at the expiration of the six-month period and that no formal plea of prescription is required. See In re Red River Line, 115 La. 867, 40 So. 250.
We have made a painstaking research of the authorities and find that the question whether prescription runs where there is no judicial seizure of a vessel or other movable came up for adjudication on several occasions, and the uniform holding of the Supreme Court is that the suit interrupts the running of prescription as the privilege does not spring from the seizure by provisional seizure or sequestration as in the case of attachment, but arises entirely from the nature of the debt. The writs of provisional seizure and sequestration are merely conservatory and remedial, and these writs in themselves grant no privilege; the privilege, if any, arises strictly independently of such remedies by virtue of the operation of the law. Conrad v. Patzelt, 29 La.Ann. 465; Harrison v. Jenks, 23 La.Ann. 707; Blanchin v. Steamer Fashion and Owners, 10 La.Ann. 49.
The Civil Code in the clearest of terms provides that there is an interruption of prescription when the possessor has been brought before a court of justice because of the property or his possession thereof. LSA-C.C. art. 3518 reads:
"A legal interruption takes place, when the possessor has been cited to appear before a court of justice, on account either of the ownership or of the possession; and the prescription is interrupted by such demand, whether the suit has been brought before a court of competent jurisdiction or not."
*321 Therefore, our opinion is that the six-month prescription established by LSA-C.C. art. 3237 has not run.
In order to subserve the ends of justice, we believe that this case should properly be remanded to the lower court for the purpose of receiving evidence touching on the point whether the vessel "Denise DeFelice" made a voyage between the time of its delivery by the shipbuilder to defendant and the institution of the suit. We now direct the trial judge to receive and consider such evidence and to render such judgment as in his opinion is warranted by the law and the evidence.
For the reasons assigned, our original decree is recalled, and the judgment of the lower court is reversed, and it is now ordered that this cause be remanded to the district court for proceedings not inconsistent with our views above-expressed.
The assessment of all court costs, including the costs of this appeal, is to await a final determination of the case.
Original decree recalled; reversed and remanded.