WATSON, Judge
ad hoc.
This is an appeal from a judgment in favor of a repairman against the owner of a boat in the amount of $1,959.00 for repairs to the boat, recognizing a privilege against the boat in favor of the intervenor-repair-man. The judgment appealed from also ordered that the boat be returned to the owner but that the Sheriff of Terrebonne Parish seize and sell the boat to satisfy the intervenor’s judgment. Costs were taxed half against the owner and half against the intervenor.
The owner of the boat, identified in the proceedings as the motor vessel “Beverly”, is the plaintiff, Universal Electric Construction Company. The defendant is Michael Liner, Sr., who is the son-in-law of the intervenor, Duffy DeRoche, doing-business as Best Machine Works.
On appeal, plaintiff-appellant complains of the money judgment against it, the recognition of the privilege and the order for seizure and sale of the vessel to satisfy the judgment.
The proceedings in the trial court were not recorded and transcribed; therefore, the facts of the case upon which this court must decide the appeal are found in the *832 Note of Evidence[1] which appears in the record and which will be reproduced here in its entirety:
“This matter was tried on November 27, 1972. A court stenographer was not present. This Court after hearing all of the evidence found the following facts:
“The United States Coast Guard published a picture of the vessel which is the subject of this dispute in a local newspaper in an attempt to determine the owner thereof. Michael Liner, Sr. saw this newspaper publication and Liner or his mother contacted the Chief of Police and also the Coast Guard in an attempt to determine if the vessel was abandoned and could be claimed by him. The Chief of Police told Liner and his mother that the police had no, jurisdiction over the matter, did not know who the vessel belonged to, that the vessel had been claimed by no one and did not care whether Liner removed the vessel from where it was moored behind the Power Plant in the city of Houma or not.
“From the testimony of the parties concerning the condition of the vessel, it was, reasonable for Liner to assume that the vessel was an abandoned vessel. Patrolman Null of the Houma Police Department described the vessel as one with the cabin rotted, the hull all rusted, the motor rusted, plenty of trash in the vessel, so much junk in the vessel that no one could sit inside the hull. Null recalls that he had seen the vessel tied up before somewhere.
“After all of the efforts taken by Liner to ascertain the owner of the vessel. (Sic) He towed the vessel to the rear of his father-in-law’s machine shop. His father-in-law, Duffy Deroche, agreed to repair the vessel and install commercial fishing gear on same and he was to be repaid by Liner at some time in the future.
“After considerable work had been done on the vessel, a Mr. Welman discovered the vessel and notified Mr. De-roche and Mr. Liner that the vessel belonged to Universal Electric Construction Company and demanded its return. Neither Deroche nor Liner opposed the return of the vessel upon due proof being shown that the vessel did belong to Universal; however Deroche insisted upon being paid for the work done on the vessel that improved same, less and excepting work done to convert same into a commercial fishing vessel.
“The Court carefully considered only the work done that innured to the benefit of the vessel and this sum amounted to ONE THOUSAND NINE HUNDRED FIFTY NINE & no/100 ($1,959.00) DOLLARS. Furthermore, this Court feels that unless Deroche is paid the sum of $1,959.00, Universal Electric Company would be unjustly enriched in this sum because they have received full benefit from’this expenditure.
“This Court took the position that Duffy Deroche was entitled to a lien and privilege on the vessel under R.S. 9:4502. There is no question that De-roche acted in good faith in performing the work on the vessel. Certainly there is no requirement in R.S. 9:4502 that the owner of the movable request that the repairs be done. R.S. 9:4502 suggests to this Court that the repairman acted in good faith in believing that the person who requested that the repairs be made appear to be the owner. This certainly was the situation insofar as Duffy De-roche was concerned, because he knew that Liner had contacted the Coast Guard, as well as the police and advertised in the newspapers, so that when Liner took possession of the vessel there *833 was certainly reasonable justification to believe that niner (sic) had a valid claim to the vessel. This Court is further impressed with the fact that Mr. Deroche depended upon the vessel as security for the work done. Certainly Deroche could not afford by his own testimony to lose the funds expended on the vessel and also, by his own testimony he indicated that if necessary, he would have relied upon a seizure of the vessel to seek reimbursement under the lien statute and was not relying on the credit of his son-in-law or anyone else.”
Counsel and the trial court treat the case as within the purview of LSA-R. S. 9:4502, which grants a general privilege on a movable LSA-R.S. 9 :4502 is of considerable length and no purpose would be served in reproducing the entire statute. The pertinent portion is found in the first sentence of paragraph A, which reads as follows:
“Any person engaged in the making or repairing of movable goods, furniture, upholstery, commodities, equipment, merchandise, machinery, or movable objects or movable property of any type or description, has a privilege on the thing for the debt due him for materials furnished or labor performed. . . .”
It is also possible that the intervenor could claim a privilege under LSA-C.C. art. 3237, subparagraph 8, which reads as follows:
“Art. 3237. The following debts are privileged on the price of ships and other vessels, in the order in which they are placed:
* * * * * *
“8. Sums due to sellers, to those who have furnished materials and to workmen employed in the construction, if the vessel has never maue a voyage; and those due to creditors for supplies, labor, repairing, victuals, armament and equipment, previous to the departure of the ship, if she has already made a voyage.”
* * * * * *
The codal article appears to contemplate claims against ships engaged in foreign commerce. The trial court chose to allow a privilege under LSA-R.S. 9:4502 rather than under the codal provision, possibly due to the difficulties of interpretation which spring from such matters as whether the vessel has made a voyage. See Graeme Spring & Brake Service v. De Felice, 98 So.2d 314 (La.App.Or.1957). We have given some consideration to the question of whether the intervenor must proceed under the claim of one privilege or the other, or whether he may enjoy the benefits of both. There has been found no reason why the privilege allowed by the trial court should not be maintained. In addition, we note, as the late Professor Harriett S. Daggett has observed, “. . . the confusion now existing as to proper interrelation of these creatures of the law is most troublesome.” [2]
The issue developed by plaintiff on appeal is whether the intervenor is entitled to recover the price of the repairs since plaintiff, the owner, did not authorize the work to be done.
First, plaintiff argues the proposition that when the owner of the object repaired does not authorize the repairs, someone with apparent authority must do so. Plaintiff cites cases interpreting LSA-R.S. 9:4501 and 9:4502 which are Mahfouz v. Yawn, 31 So.2d 295 (La.App. 2 Cir. 1947), where an insurance adjuster authorized the necessary repairs; Andress Motor Company, Inc. v. Butler, 43 So.2d 913 (La.App. 2 Cir. 1950), where the separated wife of the owner authorized the repairs; and Hopper v. Bills, 255 La. 628, 232 So.2d 296 (1970), where a State Trooper authorized the removal of an overturned vehicle.
We believe that counsel for plaintiff is correct in his appreciation of the ju *834 risprudence developed in the line of cases cited, but, we also believe that these cases would not prevent the intervenor from recovering and having his privilege recognized. It will be recalled the trial court found that intervenor acted in good faith and that he believed that the person who requested the repairs had the status to do so.
Next, plaintiff cites a line of cases where the court held that the repairman had waived his lien and privilege. These are Shepherd v. Louisiana Texas Motor Company, Inc., 15 La.App. 144, 130 So. 627 (2 Cir. 1930); Wardlaw Bros. Garage, Inc. v. Thomas, 19 La.App. 241, 140 So. 108 (2 Cir. 1932); and Babineaux v. Grisaffi, 180 So.2d 888 (La.App. 3 Cir. 1965). These casgs are situations where a tort-feasor arranged for repairs and the repairman was held to have relied solely on the tortfeasor’s promise to pay, thereby waiving his lien and privilege on the vehicle. They are not in point here. While it is somewhat difficult to square these cases with certain other applicable principles of law, we do not think the waiver of the repairman’s lien and privilege can be said to be present in the case before us. The trial court found that the intervenor was depending on the boat as security for the work and that he was not relying on the credit of his son-in-law or any other party. Thus, the line of cases establishing waiver of the lien or privilege has no applicability here.
We believe that the trial court was correct in allowing the intervenor-repairman to recover and to establish his privilege for the work which inured to the benefit of the vessel, but in disallowing recovery for the work intended to convert the vessel to a fishing craft. While plaintiff complains that it is being charged for repairs which someone else authorized, we are impressed with the apparent lack of care which plaintiff exhibited toward its boat.
Accordingly, for the reasons assigned the judgment of the trial court is found to be correct.
Costs of appeal are taxed against appellant.
Affirmed.

. Two Notes of Evidence appear in tlie record, but counsel for the parties agreed at the hearing before this court that the Note quoted is the proper one to be considered and it was initialed by counsel to so indicate.

. 4 West’s LSA Revised Statutes 178.