392 So.2d 733 (1980)
MELYN INDUSTRIES, INC., Plaintiff-Appellee,
v.
SOFEC, INC., Defendant-Appellant.
No. 7927.
Court of Appeal of Louisiana, Third Circuit.
December 17, 1980.
*734 Landry, Watkins & Bonin, Nan Landry, New Iberia, for defendant-appellant.
Provost, Ernest & Schwing, James W. Schwing, New Iberia, for plaintiff-appellee.
Before CULPEPPER, DOMENGEAUX and SWIFT, JJ.
SWIFT, Judge.
We agree with the trial judge's well reasoned decision in this case and adopt as our own his opinion which is as follows:
"Plaintiff, Melyn Industries, Inc. supplied labor, rental equipment and some material in the construction of several structures known as Single Anchor Leg Mooring Buoys (SALAM). These large steel buoys were ultimately destined to be used in the *735 Louisiana Offshore Oil Port (Loop). When completed these buoys were to be twentyone feet in diameter, forty-six feet tall and were to be constructed of five-sixteenths inch steel plate reenforced with one half to three quarter inch plate in various points. Each buoy was designed to weigh approximately one hundred and sixty-five tons. These buoys were designed to be anchored to the bottom of the Gulf Floor to a steel base approximately forty feet by forty feet. There was to be a chain leading from the base to the buoy and the buoy was to be so anchored as to withstand hurricane force winds. The purpose of the buoy is to hold a ship on location while that ship is utilizing the facilities of the Loop. It should be noted, that at all times pertinent to this inquiry, the buoys were no more than large pieces of steel, not yet fabricated into the intended final product.
Melyn was a subcontractor. The principal contractor was Gibson Industries. Gibson was apparently paid for the services and supplies it furnished. However, Gibson did not pay Melyn for the services and materials it furnished. Consequently, it is from Gibson's failure to pay Melyn that this suit arose. Gibson Industries filed bankruptcy and the action aginst (sic) that corporation has been suspended by the Bankruptcy Court. Melyn applied for a Writ of Sequestration in this Court in conjunction with its assertion of a lien under Louisiana law. Subsequently, Melyn and Sofec entered into an agreement whereby Melyn held up service of the Writ so that the buoys could be removed from the Gibson work site and completed at another work site. The agreement was to the effect that if this Court were ultimately to recognize a valid lien in favor of Melyn Industries, Sofec would then pay the amount of Melyn's claim.
The issue then before this Court is whether Melyn may assert a valid lien under Louisiana law. The starting point in resolving the problem is Civil Code Article 3183, which states: `The property of the debtor is the common pledge of his creditors and the proceeds of its sale must be distributed among them ratably, unless there exist among the creditors some lawful causes of preference.' Along with Civil Code Article 3183, attention must be directed to Civil Code Article 3185 which states, `Privileges can be claimed only for those debts to which it is expressly granted in this code.' These codal articles are authority for the rule of `stricti juris' in regards to the application of privileges. The jurisprudence of Louisiana stands for the proposition that privileges may not be extended by analogy or implication. Stated differently, any doubt in the statute granting the privilege must be resolved against the party claiming it and in favor of the party resisting the claim of privilege.
In support of his position the plaintiff relies upon codal articles 3217 and 3237 as well as RS 9:4801 and RS 9:4861. In a supplemental post trial brief the plaintiff has also argued the application of RS 9:4502.
As to Civil Code Article 3217, only subsections two and seven can conceivably be urged by the plaintiff. The relevant parts of Article 3217 read as follows: `The debts which are privileged on certain movables are the following: (2) the debt of a workman or repairman for the price of his labor on the movable which he has repaired or made if the thing continues still in his possession, and (7) the price due on movable effects if they are yet in the possession of the purchaser.' Subsection two, has no application to the present case since the objects in question are no longer in the possession of the plaintiff. Subsection seven, establishes a vendor's privilege and the relation between Melyn and Gibson and Sofec is certainly not that of vendor-vendee.
Civil Code Article 3237 also relied upon by the plaintiff provides for a privilege on `ships and vessels' in a number of specified circumstances. Subsection eight, which has the strongest application to this case and is presumably the portion of the article relied upon by the plaintiff, provides for a privilege due to suppliers of labor and materials employed in the construction of a vessel if the vessel has never made a voyage. *736 The article clearly contemplates an object used as a means of maritime transportation. The case cited by plaintiff, In Re Safti Craft Corporation, 255 Fed.Supp. 797, 1966, (affirmed 376 Fed.2d 855, 5th Cir.) does not alter this premise. That case held inter alia that the `uncompleted hull' of what was destined to be a tug boat was subject to the privilege outlined in Civil Code Article 3237. Although the term `vessel' has been given a broader application within the ambit of Federal Maritime Law, it does not follow that this liberality should be extended to the area of privileges especially in light of the doctrine of stricti juris.
Plaintiff also relies upon RS 9:4801, which grants a privilege in favor of those who perform work or furnish materials, etc., in the construction or improvement of immovable property. In order for this privilege to have application, the buoy in question must be found to be an immovable. Civil Code Article 463 states that, `Buildings, other constructions permanently attached to the ground ... are component parts of a tract of land when they belong to the owner of the ground.' Civil Code Article 462 states that `Tracts of land with their component parts are immovables.' In determining whether a `construction' is an immovable, comment (c) under Article 463 states that, `... in the absence of foundations a certain degree of integation (sic) with the ground is necessary.' Such was found to be the case in Continental Casualty v. Associated Pipe and Supply, 279 Fed. Supp. 490, 1967, (affirmed 447 Fed.2d 1041, 5th. Cir., 1977). There the Federal Court upheld a lien asserted under RS 9:4801 by various contractors engaged in building a pipeline from the Gulf to a port in Louisiana. That Court held that because of the fact that the pipeline was firmly imbedded in the soil beneath the ocean, it was an immovable. The Court went on to note that since the pipeline constituted an `improvement' to other immovable property (i. e., the Texaco Terminal Facilities) it was covered under the above cited statute regardless of whether the pipeline was an immovable or not.
This Court holds that the buoys in question do not exhibit the degree of integration or permanence that the pipelines in the Continental Casualty case did. The size and bulk of these constructed objects are not in and of themselves sufficient reasons to hold that these structures are immovables.
As to the second prong of the Continental holding, the Federal Court would apparently extend the coverage of RS 9:4801 ad infinitum since basically any object fabricated could conceivably serve the purpose of `improving' a building or other construction. In the instant case there is apparently no physical connection between the `improvement', i. e., the buoy, and the immovable, i. e., the Loop facility. Perhaps this is sufficient to narrow the broad language of the Continental case where as (sic) least the pipeline was physically attached to the immovable.
As to the plaintiff's reliance upon RS 9:4861, it is more obviously misplaced. The privilege provided by this statute runs in favor of those persons who perform labor or service in the operation of or in connection with the operation of oil wells. These privileges are also extended to those persons who do any trucking, towing or barging or who make any repairs or who furnish equipment, material or supplies for or in connection with the drilling of any wells or in connection with the operation of any wells.
It would appear that the plaintiff does not fit into the category of those people in whose favor the privilege runs. In any case reliance upon this statute would still be inappropriate since the construction, i. e., the buoy in question, is not for or in connection with the operation of any wells as required by the statute. The structure is designed to service an oil terminal facility. It bears no connection to the wellhead and therefore the privilege does not apply.
As to the privilege provided by RS 9:4502, this Court must take cognizance of the extremely broad language used by the Legislature in enacting that statute. This statute reads in pertinent part:

*737 Any person engaged in the making or repairing of movable goods, ... equipment,... or movable objects ... or movable property of any type or description, has a privilege on the thing for the debt due him for materials furnished or labor performed. (Emphasis supplied)
To narrow the construction of this broadly worded statute, Sofec has directed the attention of this Court to the case of Graeme Spring & Brake Service, Inc. v. DeFelice, 98 So.2d 314 (La.App.1957). In fact, the jurisprudence interpreting this statute is somewhat sparse. In Graeme, the Appellate Court reversed a decision of the District Court which had recognized a lien asserted under the provisions of RS 9:4502. In that case, the plaintiff was a subcontractor engaged in supplying labor and materials in the construction of a tugboat. Apparently, the principal contractor had been paid in full by the defendant boat owner. The principal contractor declared bankruptcy before the subcontractor was paid.
In the first place, the Court in Graeme, went to great lengths to define the term `making' as it appears in the (sic) in the statute to mean, `the production of a new article out of raw materials or generally the giving of new shapes, new qualities or new combinations to matter which has already gone through some other artificial process.' The Court then went on to hold that:
Plaintiff was not engaged in making the vessel within contemplation of the statute and its only part in the construction thereof was to furnish, upon the contractor's order, a small portion of the materials used and the incidental labor necessary for the installation of those materials.
The Court thus concluded that only the principal contractor was `engaged in making' the boat in question.
The Court then went on to note that the statute (RS 9:4502) `... does not accord a third person who furnishes labor or materials for the making of movable property a privilege thereon for the amount owed him.'
This Court is, of course, mindful of the doctrine of stricti juris, however this Court cannot (as did the Appellate Court for Orleans Parish) read provisions into the statute which the legislature did not intend.
The precusor (sic) of RS 9:4502 was Act 341 of 1946. The preamble of that Act purports to create the privilege in favor of `all persons, firms, or corporation ... constructing movable goods ...' The statute was subsequently amended by Act 427 of 1952. The preamble to that legislation states that the purpose of the Amendment was to add `a broader definition of those entitled to the privilege granted therein.' In this amended version, the words `engaged in the making' were substituted for the word `constructing.'
The language and history of RS 9:4502 simply does not support the narrow construction of the statute advanced by the Court in Graeme. This Court must conclude that Melyn fits into the category of `any person engaged in the making ... of movable property.' At the very least, those activities of Melyn fit into the category of `giving new qualities ... to matter which has already gone through some other artificial process,' as stated in Graeme.
It should be kept in mind, that plaintiff, in its petition, made no reference to any specific statutory authority in asserting its right to a Writ of Sequestration. In an amended petition, plaintiff prayed for `... recognition of the lien to which plaintiff is entitled under Louisiana law.'
This Court must and does conclude that Melyn has proven its claim for payment for the work done. Further, this Court holds that Melyn has asserted a valid lien on the movable in question as per RS 9:4502. Our Courts are no longer required to rely on the old common law notion of the `Theory of the Case.' Accordingly, this Court shall grant that relief which the facts of this case warrant. Plaintiff's claim for $11,260.81 and the lien and privilege in support of that amount is hereby recognized."
*738 Appellant further contends that appellee, as a subcontractor, is not entitled to any privileges for the wages it paid to its employees for the sand blasting and painting, citing Pringle-Associated Mortgage Corporation v. Eanes, 254 La. 705, 226 So.2d 502 (La.1969). In our opinion that decision is not applicable to the circumstances of this case. Aside from the fact that a different lien statute, LSA-R.S. 9:4812, was involved in Pringle, the privilege which that subcontractor unsuccessfully sought to establish through subrogation against a prior recorded mortgage was that afforded laborers which is of higher preference than the one provided subcontractors under the statute. LSA-R.S. 9:4502 makes no such distinction and the appellee here is simply asserting the privilege granted it by this statute, as one engaged through its employees in making three movable things, for the debt due for materials furnished and labor performed in such work.
For the foregoing reasons, the judgment of the district court is affirmed at appellant's costs.
AFFIRMED.