JONES, Judge.
Intervenor, Academy Mortgage, Inc., “Academy”, a judgment creditor of the original plaintiff in this case, Lee O. Pullen, appeals the trial court’s judgment recognizing the lien and privilege of the law firm of Morris Bart and Associates, hereinafter referred to as “Morris Bart”, and concluding that the extent of the lien resulted in no funds being available to other creditors. We affirm the trial court’s judgment.
Morris Bart represented Mr. Pullen in a personal injury cause of action resulting from an automobile accident on June 25, 1986. A jury awarded Mr. Pullen the sum of Forty-Seven Thousand Five Hundred Dollars ($47,500) plus interest and costs arising out of the accident and judgment was rendered on May 25, 1989. Pursuant to a writ of fieri facias, issued in First City Court, City of New Orleans, Academy attempted to seize the proceeds of this judgment to satisfy a judgment which it had obtained against Mr. Pullen in Second Parish Court for the Parish of Jefferson. In light of the conflicting interests, Morris Bart initiated a concursus proceeding on or about November 12, 1990 wherein it deposited the sum of Fifty-Five Thousand Three Hundred Eighty-Eight and 07/100 Dollars ($55,388.07) into the Registry of the Court. A hearing was held to determine who was entitled to the funds. At this proceeding, Morris Bart argued that the total sum of attorneys’ fees, expenses incurred, and expenses guaranteed in regard to this litigation exceeded the total amount deposited into the Registry of the Court and that these costs primed any claim which Academy may have to any part of the funds on deposit with the Registry of the Court. The trial court agreed and judgment was rendered March 20, 1991 recognizing Morris Bart’s lien. Academy appeals the trial court’s judgment.
The trial court’s judgment recognized that Morris Bart had a lien on the concur-sus funds pursuant to La.R.S. 9:5001 which provides:
A special privilege is hereby granted to attorneys at law for the amount of their professional fees on all judgments obtained by them, and on the property recovered thereby, either as plaintiff or defendant, to take rank as a first privilege thereon.
The trial court further held that Morris Bart’s privilege was superior to Academy’s because Academy did not record its judgment until October 31, 1990 and Morris Bart’s privilege was established at the time of final judgment in the law suit.
Academy argues that the rights of the parties were fixed by the judgment rendered May 25, 1989. It cites Malbrough v. Kiff, 312 So.2d 915 (La.App. 1st Cir.1975) to support its position that a judgment becomes final upon rendition in writing by the trial court judge. However, the court determined in the concursus proceeding that the judgment did not become final until October 5, 1990 when plaintiff’s application for writs was denied by the Louisiana Supreme Court. In so finding the trial court applied La.R.S. 9:5001, which was amended effective June 16, 1989, to the facts of this case. By amending La.R.S. 9:5001, the legislature clarified the phrase “professional fees” as it appeared in La. R.S. 9:5001 to include the agreed upon fee, whether fixed or contingent, and any and all other amounts advanced by the attorney to or on behalf of the client as permitted by *1269 the Rules of Professional Conduct of the Louisiana State Bar Association.
Morris Bart responds that there was no error in the trial court’s applying R.S. 9:5001 as amended. First, it argues there is no privilege until such time as there is a corpus on which to attach the lien. Because the judgment did not become final until writs were denied by the Supreme Court on October 5, 1990, that is the date that Morris Bart’s contingency fee contract became enforceable. Furthermore, Morris Bart argues the June 16, 1989 amendment should be given retroactive effect. It cites Ardoin v. Hartford Accident & Indemnity Company, 360 So.2d 1331 (La.1978) which states:
The general principle of non-retroactivity of laws is stated in Article 8 of the Civil Code which provides:
‘A law can prescribe only for the future; it can have no retrospective operation, nor can it impair the obligation of contracts.’
According to civilian theory, however, the principle of non-retroactivity of existing legislation admits three exceptions: laws that suppress or lessen penalties, laws that are merely interpretive of existing legislation, and those that the legislature has expressly or impliedly declared to be retroactive. 1 M. Planiol,. Civil Law Treatise, Nos. 249-252. (La. St.L.Inst.Transl.1959; A. Yiannopoulos, Civil Law System, 68 (1977).
The exception relating to interpretive laws has been explained by Professor Yiannopoulos as follows:
‘ * * * The exception ... is justified on the ground that these laws do not establish new rules; they merely determine the meaning of existing laws and may thus be applied to facts occurring prior to their promulgation. In these circumstances, there is an apparent rather than real retroactivity, because it is the original rather than the interpretive law that establishes rights and duties.* * ’ Yiannopoulos, supra, at p. 68.
This court has recognized that interpretive legislation cannot properly be said to divest vested rights, because, under civilian theory, such legislation does not violate the principle of non-retroactivity of laws. The interpretive legislation does not create new rules, but merely establishes the meaning that the interpreted statute had from the time of its enactment. It is the original statute, not the interpretive one, that establishes rights and duties. Gulf Oil Corporation v. State Mineral Board, et al, 317 So.2d 576 (La.1974); 1 M. Planiol, Treatise on the Civil Law, Section 251 at 179 (La.State L.Inst.Transl.1959); cf. Green v. Liberty Mutual, 352 So.2d 366 (La. App. 4th Cir.1977).
(emphasis added). Morris Bart insists that it is clear that the legislature did not create any new rights by the 1989 amendment to R.S. 9:5001, but rather was defining what “professional fees” meant as used in the original statute.
Academy counters that the law is not interpretive, rather it is a remedial substantive law that was enacted to remedy a social problem resulting from a gap, silence or deficiency of the prior law. Quoting Rodriguez v. Brown and Root, Inc., 410 So.2d 325 (La.App. 5th Cir.1982), Academy argues that absent a contrary legislative directive such a law should not be applied retroactively. See also La.C.C. Article 6. Further, Academy argues, that Louisiana law has long held that liens and privileges are stricti juris and any doubt in the statute granting the privilege must be resolved against the party claiming it and in favor of the party resisting the claim of the privilege. Melyn Industries, Inc. v. Sofec, Inc., 392 So.2d 733 (La.App. 3d Cir.1980).
Although Morris Bart’s argument that the amendment is interpretive is persuasive, we do not find that the trial court was applying the statute retroactively in the instant case. We find that Morris Bart has a privilege on the proceeds of the judgment which dates from the time the Supreme Court refused writs and it could enforce its contingency contract. This is consistent with the manner in which the statute has been applied heretofore. R.S. 9:5001 grants to attorneys a privilege of first rank for their fees on judgments obtained by them and on the property recov *1270 ered thereby. In Roberts v. Hanover Ins. Co., 338 So.2d 158 (La.App. 2d Cir.1976) the court discussed the history of La.R.S. 9:5001. Act 124 of 1906 amended the attorney fee privilege provisions to subject not only the judgment but any property recovered thereunder to the privilege. The court held that attorneys are not “ordinary creditors” nor must they record their privilege.
For the reasons stated herein, we affirm the trial court’s judgment.
AFFIRMED.
PLOTKIN, J., concurs with written reasons.