PARRO, J.
 

 | ¡Lafayette Electrical Marine Supply, Inc. (LEMS) appeals the granting of a summary judgment in favor of Abdon Cal-íais Offshore, LLC (Abdon), which dismissed its petition for a declaratory judgment recognizing its lien or privilege against a dry dock owned by Abdon. Based on our
 
 de novo
 
 review of the evidence, we affirm the judgment.
 

 BACKGROUND
 

 During February and March 2009, LEMS provided electrical materials and supplies on open account to Creole Labor Services, LLC (Creole) to be used in the construction of a dry dock structure owned by Abdon. The value of the materials supplied to Creole and incorporated into the dry dock amounted to $9,406.32. Creole did not pay LEMS for these materials and supplies.
 

 In June 2009, LEMS filed suit against Abdon, seeking a declaratory judgment recognizing a lien or privilege against Ab-don’s dry dock under the provisions of LSA-R.S. 9:4502 and/or LSA-C.C. art. 3237. Abdon filed a motion for summary judgment, which was granted. This appeal followed.
 

 LEMS contends the district court erred in considering an affidavit filed in support of Abdon’s motion, because that affidavit did not contain an affirmative declaration that the affiant had personal knowledge of the factual statements in the affidavit, nor did it state how the affiant had come by such knowledge. LEMS further claims that the court erred in failing to recognize its lien or privilege under LSA-R.S. 9:4502 and/or LSA-C.C. art. 3237 for furnishing materials and supplies in connection with the construction of Abdon’s dry dock.
 

 APPLICABLE LAW
 

 An appellate court reviews a district court’s decision to grant a motion for summary judgment
 
 de novo,
 
 using the same criteria that govern the district court’s consideration of whether summary judgment is appropriate.
 
 Smith v. Our Lady of the Lake Hosp., Inc.,
 
 93-2512 (La.7/5/94), 639 So.2d 730, 750. The motion should be granted if the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits, show that there is no genuine
 
 *892
 
 issue of material fact, and |3the mover is entitled to judgment as a matter of law. LSA-C.C.P. art. 966(B);
 
 Washauer v. J.C. Penney, Inc.,
 
 03-0642 (La.App. 1st Cir.4/21/04), 879 So.2d 195, 197. If the moving party will not bear the burden of proof at trial on the matter before the court on the motion, the moving party must point out that there is an absence of factual support for one or more elements essential to the adverse party’s claim, action, or defense. If the adverse party then fails to produce factual support sufficient to establish that he will be able to satisfy his evidentiary burden of proof at trial, there is no genuine issue of material fact and summary judgment must be granted. LSA-C.C.P. art. 966(C)(2);
 
 Fredericks v. Daiquiris & Creams of Mandeville, LLC.,
 
 04-0567 (La.App. 1st Cir.3/24/05), 906 So.2d 636, 639,
 
 writ denied,
 
 05-1047 (La.6/17/05), 904 So.2d 706.
 

 ANALYSIS
 

 Admissibility of Affidavit
 

 Article 967
 
 of
 
 the Louisiana Code of Civil Procedure describes the type of documentation a party may submit in support of or in opposition to a motion for summary judgment.
 
 Independent Fire Ins. Co. v. Sunbeam Corp.,
 
 99-2181 and 99-2257 (La.2/29/00), 755 So.2d 226, 231. Supporting and opposing affidavits shall be made on personal knowledge, shall set forth facts that would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein. LSA-C.C.P. art. 967;
 
 Boland v. West Feliciana Parish Police Jury,
 
 03-1297 (La.App. 1st Cir.6/25/04), 878 So.2d 808, 813,
 
 writ denied,
 
 04-2286 (La.11/24/04), 888 So.2d 231.
 

 In support of its motion, Abdon submitted the affidavit of Bill Foret, in which he identifies himself as the President of Ab-don and recites certain facts relevant to the motion. At the hearing on the motion, LEMS objected to the admission of this affidavit on the grounds that it did not state that the affiant had personal knowledge of the recited facts, nor did it show how he was competent to testify to those facts. The objection was overruled, and LEMS re-urges it in this appeal. Abdon contends the affidavit is admissible, because Foret’s position as the President of Abdon establishes his competence to testify to the information provided and' demonstrates that he was in a position to have personal knowledge of the facts set out in his affidavit.
 

 [4A strikingly similar situation was considered by the Third Circuit Court of Appeal in
 
 Chavers v. Bright Truck Leasing,
 
 06-1011 (La.App. 3rd Cir.12/6/06), 945 So.2d 838, 844-45,
 
 unit denied,
 
 07-0304 (La.4/5/07), 954 So.2d 141. In that case, the appellant contended that the trial court erred in considering the affidavit of a company’s senior vice-president, on the grounds that it was not based on his personal knowledge, as required by LSA-C.C.P. art. 967. The court disagreed, stating:
 

 The affidavit of Freeman expressly states that he is the senior vice-president of CitiCapital and that CitiCapital purchased Associates subsequent to the accident at issue. The trial court noted that Freeman’s position as senior vice-president demonstrated his competence to testify as to the substance within his affidavit.... We agree with the trial court that Freeman, in his capacity as senior vice-president of CitiCapital,. had the requisite knowledge to attest to the contents of his affidavit. We, therefore, affirm the ruling of the trial court that the affidavit of Ken Freeman was admissible in support of Associates’ motion for summary judgment. (Footnote omitted).
 

 
 *893
 
 The
 
 Chavers
 
 court further observed that the appellant had not put forth any contradictory evidence on the issue before the court. In the case before us, we similarly note that LEMS did not produce any evidence in opposition to the motion that would contradict the statements attested to by Foret. We find no error in the trial court’s admission of Foret’s affidavit.
 

 Privilege under LSA-R.S. 9:4502
 

 Louisiana Revised Statute 9:4502(A)(1) provides, in pertinent part, as follows:
 

 Any person engaged in the making or repairing of movable goods, furniture, upholstery, commodities, equipment, merchandise, machinery, marine vessels, trailers used in transporting marine vessels, equipment or motors used on marine vessels, or movable objects or movable property of any type or description, has a privilege on the thing for the debt due him for materials furnished or labor performed.
 

 Subsections (B) and (C) of the statute establish the remedies for the enforcement of the privilege on the thing for which the materials were furnished in order to obtain payment of the debt due.
 

 There is no dispute in this case that LEMS did not have a contract with Abdon. It merely furnished electrical materials and supplies on open account to Creole, and Creole provided the labor to incorporate those goods into the Abdon dry dock structure. As noted by both parties in briefs, the privilege on movable property described in LSA-R.S. 9:4502 has not generated much jurisprudence. The two cases involving third-party | ^suppliers of goods incorporated into a movable are
 
 Graeme Spring & Brake Serv., Inc. v. De Felice,
 
 98 So.2d 314 (La.App.Orl.1957), and
 
 Melyn Industries, Inc. v. Sofec, Inc.,
 
 392 So.2d 733 (La.App. 3rd Cir.1980).
 

 In
 
 Graeme,
 
 the plaintiff had furnished materials and labor to a contractor for construction of the defendant’s tugboat, and sought recognition of its lien or privilege under LSA-R.S. 9:4502 when it was not paid for its services and materials. The appellate court concluded that the plaintiff was not engaged in the making, or manufacturing, of the tugboat, nor was it engaged in its repair, but had merely furnished, upon the contractor’s order, a small portion of the materials used and the incidental labor necessary for the installation of those materials. The court concluded:
 

 It appears perfectly plain to us that plaintiff who was not engaged in “making” or “repairing” the tug but who merely furnished and installed some of the materials used in the work, has no privilege on the vessel for a debt due by the contractor. The statute, unlike those provisions of the law which grant privileges on immovables for labor and materials, does not accord a third person who furnishes labor or materials for the making of movable property a privilege thereon for the amount owed him. If the Legislature ever intended that such person were to be protected by a privilege on the movable, it would have said so.
 

 Graeme,
 
 98 So.2d at 318.
 
 [1]
 

 The
 
 Melyn
 
 case is very similar, in that the plaintiff subcontractor supplied labor, rental equipment, and some materials used by the contractor in the construction of several large structures known as single anchor leg mooring buoys for the Louisiana Offshore Oil Port. Although the principal contractor apparently was paid for the services and supplies it furnished, it did
 
 *894
 
 not pay its subcontractor and eventually filed for bankruptcy. Therefore, the plaintiff filed suit against the owner of the mooring buoys to assert its privilege for furnishing materials and labor for their construction. However, the outcome in the
 
 Melyn
 
 case differed from the
 
 Graeme
 
 case, which the
 
 Melyn
 
 court criticized for construing the statute too narrowly and reading provisions into the statute that the legislature did not intend. The
 
 Melyn
 
 court concluded that because the plaintiff actually worked on the project to install equipment, the plaintiff had been engaged in the making of the movable property and was entitled to a privilege on the mooring Ifibuoys.
 
 Melyn,
 
 392 So.2d at 737.
 

 Both of these cases differ from the matter before us, in that LEMS did not provide any labor or installation services for the materials it supplied to Creole for the dry dock. It is, therefore, one step removed from the position of the subcontractors in both the
 
 Graeme
 
 and
 
 Melyn
 
 cases, as it was not directly “engaged in the making” of the movable structure. Accordingly, we conclude the district court was legally correct in determining that LEMS did not qualify for a privilege under LSA-R.S. 9:4502.
 

 Privilege under LSA-C.C. art. 3237
 

 LEMS contends this court should recognize its privilege on Abdon’s dry dock under the provisions of Louisiana Civil Code article 3237, which states, in pertinent part:
 

 The following debts are privileged on the price of ships and other vessels, in the order in which they are placed:
 

 * * *
 

 8. Sums due to sellers, to those who have furnished materials and to workmen employed in the construction, if the vessel has never made a voyage; and those due to creditors for supplies, labor, repairing, victuals, armament and equipment, previous to the departure of the ship, if she has already made a voyage.
 

 LEMS contends the dry dock structure is a vessel, and it should have a privilege for the sums due for the materials it furnished for its construction. A definition of “vessel” generally recognized in the jurisprudence is found in 1 U.S.C.A. § 3, which states: “[t]he word ‘vessel’ includes every description of watercraft or other artificial contrivance used, or capable of being used, as a means of transportation on water.”
 

 The undisputed facts in this case, as established by Foret’s affidavit in support of Abdon’s motion, are that Abdon contracted with Creole to complete a partially constructed dry dock for it. This dry dock has no motor or other means of propulsion, and can only be moved from one place to another on the surface of the water by being towed or pushed. It was not designed or used for navigation or transportation on water. Rather, after being moved by a tugboat from the Creole facility in Houma, Louisiana, to Abdon’s dock in Golden Meadow, Louisiana, it was permanently attached to the Abdon dock. It has not been moved since being moored there. After Abdon established these facts in the evidence supporting its motion, the burden of proof |7shifted to LEMS to demonstrate that it could satisfy its burden of proof at trial that the dry dock was a vessel, and thus, was subject to the privilege set out in Article 3237. However, LEMS provided no evidence in opposition to the motion that would suggest there was a genuine issue of material fact concerning the nature or use of the dry dock. Therefore, the district court (and this court) had before it all the facts needed to determine, based on the law established in the jurisprudence, whether the dry dock could be considered a vessel. LEMS suggests that because the dry dock was afloat at one point after its completion, it was “capable
 
 *895
 
 of being used ... as a means of transportation on water,” and thus was a vessel. We disagree with this contention. After Hurricane Katrina hit Louisiana, many houses, storage sheds, and decks were lifted off their foundations and set adrift in the water; motor vehicles were similarly caught up in the rising water and floated to new locations; even fiberglass bathtubs were pushed or pulled by people to ferry children or personal belongings out of the flooded area. No one would call these items “vessels” in the context of Article 3237, although without a doubt, they all floated temporarily and were moved by wind, water currents, or human energy from one place to another on the surface of the water. As early as 1887, the United States Supreme Court concluded that a floating dry dock that had been moored in the same location for twenty years was not a vessel, but was a “fixed structure” that had been “permanently moored.”
 
 See Cope v. Vallette Dry-Dock Co.,
 
 119 U.S. 625, 7 S.Ct. 336, 30 L.Ed. 501 (1887). Simply calling a fixed structure a “vessel” does not raise a genuine issue of material fact. Accordingly, we conclude, as a matter of law, that the dry dock involved in this case, which was also permanently affixed, was not a vessel, and the privilege described in Article 3237 was not available to LEMS.
 

 CONCLUSION
 

 For the above reasons, we affirm the granting of Abdon’s motion for summary judgment and the dismissal of LEMS’ request for a declaratory judgment regarding a privilege in its favor over Abdon’s dry dock. All costs of this appeal are assessed to LEMS.
 

 AFFIRMED.
 

 KUHN, J., concurs.
 

 [1]
 

 . On rehearing, the court remanded the case to the district court for consideration of whether the plaintiff might have a lien or privilege on the vessel under LSA-C.C. art. 3237.