KUHN, J.
1 ¡Vanessa Y. Schultz, in her capacity as independent administratrix of the Succession of Boyd White, filed suit seeking a judgment that required defendant, Brenda Jean White, to name Schultz, in her representative capacity, as 50 percent beneficiary of Ms. White’s Louisiana State Employees’ Retirement System (“LASERS”) benefits.[2] After a hearing on the pai'ties’ cross motions for summary judgment, the trial court signed a judgment denying Schultz’s motion for summary judgment, granting Ms. White’s motion for summary judgment, and dismissing Schultz’s claims with prejudice. We affirm.
I.PROCEDURAL AND FACTUAL BACKGROUND
The following facts are undisputed. Mr. and Ms. White were married from October 28, 1984, until August 23, 2005, during which time Ms. White was an active and contributing member of LASERS. On September 11, 2007, the Whites executed a community property settlement, which provided as follows, in pertinent part:
II.FULL SETTLEMENT
The parties desire to settle and liquidate the community that formerly existed between them, and have agreed to do so as set forth in this agreement. Each party ... makes this settlement and exchange agreeing that the properties and rights exchanged, transferred and relinquished are an equal and proportionate division of the property....
III.NO ENCUMBRANCES CREATED
The parties do not wish nor intend to create any mortgages, stipulations pour *951 autri, privileges, liens, encumbrances, servitudes, or |3resolutory conditions on any of the property transferred by this agreement except as otherwise provided.
[[Image here]]
IV.TRANSFER TO FIRST PARTY
1. One (1) certain lot or parcel of ground, together with all the buildings and improvements thereon, situated in ... RANDOLPH HEIGHTS SUBDIVISION, and ... said lot fronting ... on Dancy Ave.
[[Image here]]
2. All movable property in the residence located at 9512 Dancy Avenue, Baton Rouge, Louisiana 70814.
3. All of appearers right, title, and/or interest in the retirement benefits that may be owed and payable to [Ms. White] by LASERS, be it an interest in a refund of contributions, a regular retirement benefit, a deferred retirement option, an initial benefit option, any survivors’ rights or any other benefit that he may have otherwise had an interest in.
V.TRANSFER TO SECOND PARTY
[Ms. White] transfers ... unto [Mr. White] ... the following described property:
1. The sum of THIRTY-THREE THOUSAND DOLLARS ($33,000).
2. All of the movable property currently in the possession of [Mr. White].
VI.DEBTS AND OTHER OBLIGATIONS
[Ms. White] agrees to pay, and to hold [Mr. White] free and harmless from the following obligations:
1. The home mortgage ... in the approximate amount of TWENTY-NINE THOUSAND FOURTEEN DOLLARS ($29,014).
2. The IRS debt in the amount of One Thousand Six Hundred Thirty-Six and 83/100 ($1,636.83) Dollars.
Additionally, [Ms. White] agrees to designate [Mr. White] 50% beneficiary of her [LASERS] Benefits.
[[Image here]]
[JX. SUCCESSORS
All of the agreements and stipulations contained in this settlement shall inure to the benefit of and be binding on the heirs, successors, and assigns of the parties.
[[Image here]]
XIV. RETIREMENT/PENSION PLAN BENEFITS
The parties agree to sign all necessary papers and take such actions to have a Qualified Domestic Relation Order (QDRO) drafted and approved by a Court of competent jurisdiction.
On December 9, 2007, Mr. White died. As of that date, Ms. White had not designated Mr. White as a beneficiary, and she has not designated him as such since his death. According to a November 21, 2008 affidavit of Kristi Folse, an Administrative Program Director 2 in the Member Services Division for LASERS, Ms. White had accrued $38,082.83 in contributions to LASERS from October 28,1984 to August 23, 2005. According to a September 14, 2009 affidavit of Ms. Folse, Ms. White first became eligible to retire and to draw a monthly benefit on April 1, 2009, and she joined the deferred retirement option plan [DROP] on that date. She chose the “Maximum option,” and “Multiple beneficiaries were chosen for her monthly re *952 tirement benefit and for her DROP account.” [3]
In support of her own motion for summary judgment that sought the dismissal of Schultz’s claims, Ms. White filed an affidavit wherein she attested that “[tjhrough the beneficiary designation [in the community property settlement], |5it was intended that [Mr. White] would receive 50% of any unpaid retirement benefits payable upon my death, in the event I predeceased [Mr. White].” Mrs. White further attested, “It was never my intention for the contract provisions to extend to [Mr. White’s] children in the event he predeceased me.”
After a hearing on the cross-motions for summary judgment, the trial court rendered judgment in Ms. White’s favor, reasoning, in pertinent part, “Title to the retirement account could not and did not transfer prior to [Mr. White’s] death, irrespective of whether [Ms. White] had [complied with] her obligation to name him.... There [was] no transfer of assets to his estate; therefore, the children have no claim.” In conformity with these oral reasons, the trial court signed a written judgment that granted Ms. White’s motion for summary judgment, denied Schultz’s motion for summary judgment, and dismissed Schultz’s claims with prejudice.
Schultz has appealed, urging that the trial court erred in ruling that upon Mr. White’s death, Ms. White had no obligation to designate either Mr. White or Schultz, in her representative capacity, as a beneficiary. Schultz maintains that the provisions of the community property settlement were violated by Ms. White’s failure to name Mr. White as a beneficiary of the LASERS retirement benefit. Schultz submits that Ms. White’s obligation to name Mr. White as a beneficiary is now owed to his succession, and that Ms. White is obliged to name Schultz in her representative capacity as 50 percent beneficiary of Ms. White’s LASERS’s benefit.
Conversely, Ms. White contends that if she had named Mr. White as a beneficiary before his death, any rights he would have had to a portion of her |fiLASERS benefits terminated upon his death. Thus, she asserts that any claim that Mr. White once had with respect to the LASERS benefits is not heritable by his heirs.
II. ANALYSIS
A motion for summary judgment will be granted if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and the mover is entitled to judgment as a matter of law. La. C.C.P. art. 966(B). Summary judgment is favored and shall be construed to secure the just, speedy, and inexpensive determination of every action. La. C.C.P. art. 966(A)(2).
The initial burden of proof remains with the movant. However, if the movant will not bear the burden of proof at trial, he need not negate all essential elements of the adverse party’s claim, but he must point out that there is an absence of factual support for one or more elements essential to the claim. La. C.C.P. art. 966(C)(2). *953 Once the movant has met his initial burden of proof, the burden shifts to the non-moving party to produce factual support sufficient to establish that he will be able to satisfy his evidentiary burden at trial. See Id.; Samaha v. Rau, 07-1726, p. 5 (La.2/26/08), 977 So.2d 880, 883. The non-moving party may not rest on mere allegations or denials but must set forth specific facts that show that a genuine issue of material fact remains. If the nonmoving party fails to meet this burden, there is no genuine issue of material fact, and the movant is entitled to summary judgment as a matter of law. Berry v. Paul Revere Life Ins. Co., 08-0945, p. 6 (La.App. 1st Cir.7/9/09), 21 So.3d 385, 388, writs denied, 09-2220 & 09-2241 (La.12/18/09), 23 So.3d 942 & 945; see |7La. C.C.P. art. 966(C)(2). An appellate court reviews a district court’s decision to grant a motion for summary judgment de novo, using the same criteria that govern the district court’s consideration of whether summary judgment is appropriate. Lafayette Elec. & Marine Supply, Inc. v. Abdon Callais Offshore, L.L.C., 09-2277, p. 1 (La.App. 1st Cir.7/29/2010), 44 So.3d 890.
Under Louisiana’s community property law, a pension right derived from a spouse’s employment during the existence of the marriage is a community asset subject to division upon dissolution of the community. La. C.C. art. 2338; Hare v. Hodgins, 586 So.2d 118, 122 (La.1991). On appeal, however, the parties do not dispute that under the terms of the community property settlement, Mr. White expressly transferred his community interest in the LASERS contributions and any ownership interest in the LASERS retirement benefit to Ms. White.[4] Schultz claims that under the settlement terms, in exchange for giving up this community asset, Mr. White was entitled to be designated as a 50 percent beneficiary of Ms. White’s LASERS benefits. While Ms. White contends that she intended that Mr. White would receive a benefit only upon her death, Schultz contends that Mr. White was entitled to receive a monthly benefit upon Ms. White’s retirement, and upon Mr. White’s death, the right to receive such a benefit was transmitted to his estate.
In Louisiana State Employees’ Retirement System (LASERS) v. McWilliams, 06-2191, pp. 7-8 (La.12/2/08), 996 So.2d 1036, 1041-1042, the ^supreme court set forth the following general discussion of LASERS, which is also pertinent to the present case:
LASERS is a comprehensive qualified defined benefit pension and retirement plan under Section 401(a) of the Internal Revenue code, and its provisions and regulations are outlined in La. R.S. 11:401, et seq. The statute provides that each person who becomes an employee in the state service, except those specifically excluded, shall become a member of the system as a condition of employment. La. R.S. 11:411(1). Under LASERS, any member hired on or before Juñe 30, 2006, shall be eligible for retirement if he has thirty years or more of service at any age, twenty-five years or more of service at age fifty-five or thereafter, or ten years or more of service at age sixty or thereafter. La. R.S. ll:441(A)(l)(a)-(c). (footnote addressing another ground for retirement eligibility omitted).
LASERS retirement benefits are computed as follows: “[a] member who retires effective on or after July 1, 1973, shall receive a maximum retirement al *954 lowance equal to two and one-half percent of average compensation, as determined under R.S. 11:231, for every year of creditable service, plus three hundred dollars.” La. R.S. 11:444(A). The member will receive this retirement benefit throughout his lifetime, unless he elects some other option pursuant to La. R.S. 11:446, whereby he receives a reduced retirement benefit and benefits are paid to another person he nominates.... LASERS also provides for optional enrollment in [DROP], in lieu of terminating employment and accepting a retirement allowance. La. R.S. 11:447-451.4. (footnote omitted)
“Retirement” means the “termination of active service, with a retirement allowance granted under the provisions of [Chapter 1, addressing LASERS].” La. R.S. 11:403(24). Upon retirement, “[t]he retirement allowance, annuity or benefit shall be paid in equal monthly installments for life....” La. R.S. 11:445 A. “Retirement allowance or benefit” means an annuity for life paid in equal monthly installments. La. R.S. 11:403(25). A “beneficiary” means “any person designated by the member or legally entitled to receive a retirement allowance, an annuity, or other benefit.” La. R.S. 11:403(7).
| ¡iLouisiana Revised Statutes 11:446 allows a retiree to receive his benefit in a retirement allowance payable throughout his life or he may elect one of the options set forth therein and receive the actuarial equivalent of his retirement allowance in a reduced retirement allowance payable throughout life. Options 1, 2-A, 2B, and 3 provide for payments to be made to someone other than the member/retiree (i.e., a person nominated by written designation duly acknowledged and filed with the board of trustees) upon the member/retiree’s death. Option 4 provides, “Some other benefit or benefits shall be paid either to the member or to the person or persons he nominated, provided the other benefit or benefits, together with the reduced retirement allowance, shall be certified by the actuary to be of equivalent actuarial value to his retirement allowance and shall be approved by the board.” Option 5 provides an option whereby the member may receive an initial benefit, plus a reduced monthly retirement allowance.
According to the terms of the community property settlement executed by the Whites, the agreements contained in the settlement inured to the benefit of the “heirs, successors, and assigns of the parties.” Generally, an action to enforce an obligation is the property of the obligee, which on his death is transmitted with his estate to his heirs, universal legatees, or legatees under a universal title, except as otherwise provided by law. La. C.C.P. art. 426. But not all obligations are heritable. Louisiana Civil Code article 1765 provides, “An obligation is heritable when its performance may be enforced by a successor of the obligee or against a successor of the obligor.... A heritable obligation is also transferable between living persons.” Louisiana Civil Code article 1766 further provides, in pertinent part, “An obligation is strictly personal when its performance can be enforced only | inby the obligee, or only against the obligor.... When the performance is intended for the benefit of the obligee exclusively, the obligation is strictly personal on the part of that obli-gee.”
Addressing the facts of the present case, the obligation of Ms. White to name Mr. White as a beneficiary is not a heritable obligation. If Ms. White had named Mr. White as a beneficiary of her LASERS benefits before his death, Mr. White could not have transferred his beneficiary status *955 to another party. A beneficiary can only be nominated by the LASERS member[5] in a written designation duly acknowledged. La. R.S. 11:446. Since Mr. White could not have transferred his purported right to be named as a beneficiary to another person during his lifetime, Ms. White’s obligation to name him as a beneficiary was not transmitted to his heirs or legatees upon his death.[6] Because the LASERS statutory provisions do not provide that a benefit is payable to the estate of a named beneficiary upon his death, we conclude that Ms. White’s performance of the obligation to specify Mr. White as a beneficiary was a performance that was intended for the exclusive benefit of Mr. White. Thus, it was a strictly personal obligation with respect to Mr. White. La. C.C. art. 1766.[7] If Mr. White had been living when Ms. White entered the DROP program, and if Ms. Wfiiite had further elected any one of the reduced retirement allowance options in La. R.S. 11:446 Inand had designated Mr. White as a beneficiary, upon his death, her reduced benefit would have changed to the maximum benefit afforded by La. R.S. 11:444. See La. R.S. 11:446 D, which provides, in pertinent part:
If the beneficiary dies at any time before the death of the retiree, the benefits payable to the retiree shall be increased to the amount the retiree would have received had the retiree selected the maximum benefit, and the retiree’s reduced benefit shall change to the maximum benefit effective on the first day of the next month following the death of the designated beneficiary.
Upon Mr. White’s death, by operation of law, Ms. White would have received the maximum benefit, which is the option Ms. White ultimately chose when she entered the DROP program after Mr. White’s death. Thus, we conclude Schultz, as the independent administratrix of the Succession of Boyd White, did not establish that she is entitled to be designated as 50 percent beneficiary of Ms. White’s LASERS benefits.[8]
For these reasons, we conclude that Schultz, as mover, did not establish that she was entitled to judgment as a matter of law. The trial court properly denied her motion for summary judgment.
*956 III. CONCLUSION
For these reasons, we affirm the trial court’s judgment. Appeal costs are assessed against plaintiff-appellant, Vanessa Y. Schultz.
AFFIRMED.

. Alternatively, Schultz prayed for a judgment ordering Ms. White to pay the sum of $19,041.42 to reimburse Mr. White’s succession for these community property benefits.

. On appeal, Schultz does not advance her claim for reimbursement of 50 percent of Ms. White’s LASERS contributions during the marriage. Rather, she seeks to enforce the terms of the community property settlement.

. Louisiana Revised Statutes 11:403(17) defines a "member'' as a person included in the membership of the system.

. To allow substitutions of beneficiaries would operate contrary to the principles of actuarial soundness that are crucial to our state’s retirement systems. See La. Const. Art. 10, § 29(E).

. Moreover, the evidence did not establish that Mr. White contemplated his rights were greater than those set forth in the applicable LASERS provisions. Schultz did not submit any evidence purporting to establish that Mr. White contemplated that his interest would be transmitted to his estate or that such an intent was made known to Ms. White. Additionally, Schultz has not sought to set aside the community property settlement based on error. See La. C.C. art. 1949.

. Further, Schultz’s petition did not pray for Mr. White to be designated as a named beneficiary. In any case, such a designation would have had no effect under the applicable laws. No retirement benefits were payable before his death because Ms. White was at that time an active, contributing member of LASERS and had not yet retired. See La. R.S. 11:291 G, which states, "A state ... retirement system shall not pay any funds to any persons until such funds normally become payable as provided by the laws governing the retirement system.” And after Mr. White’s death, La. R.S. 11:446 D mandates that Ms. White shall receive the maximum retirement benefit. Accordingly, this court will not order a vain and useless act.